[Civ. No. 14222. First Dist., Div. One. June 12, 1950.]

EDITH C. NEALIS, Appellant, v. THOMAS M. CARLSON, as Administrator, etc., Defendant; JANET GUIDOTTI, Intervener and Respondent.

Robert E. Hatch for Appellant.

Erskine, Erskine & Tulley for Respondent.

PETERS, P. J.—This is an appeal from an order of the superior court denying a motion of the plaintiff to vacate a final decree of divorce on the ground that it was secured by fraud. After a hearing, the trial court denied the motion to vacate by a minute order dated October 2, 1947. There was no direction in the minute order that a formal order was to be later prepared. Thereafter, on October 30, 1947, the

trial court filed a formal written order, complete with findings, denying the motion. The appeal was filed on November 24, 1947. Whichever order was the proper one from which to appeal, the notice of appeal was filed within the 60 days permitted by rule 2(a) of the Rules on Appeal. In the interests of orderly procedure, however, it should be mentioned that under rule 2(b)(2), where findings are not essential, and no reference is made in the minute order for the preparation of a formal order, the only appealable order is the minute order, and the formal order later filed is *functus officio*. (*Pessarra* v. *Pessarra*, 80 Cal.App.2d 965 [183 P.2d 279].)

The facts most favorable to respondent, as disclosed from the settled statement and clerk's transcript, are as follows:

The appellant, Edith C. Nealis, married Carl H. Nealis in December of 1917. The parties had two children. On June 9, 1927, Edith secured an interlocutory decree of divorce embodying the terms of a property settlement agreement under which Edith received all of the community property, custody of the children and an award of $150 per month as alimony and support for the children. On August 27, 1935, on the motion of the husband, the trial court entered a final decree of divorce which severed the marriage relationship and continued the property, custody, alimony and support provisions of the interlocutory. In support of the motion to have the final decree entered, Carl filed an affidavit in which, among other things, he averred that all of the requirements of the interlocutory "have been fully complied with on the part of the moving party herein, and he is not in default in any thereof." This averment was false, in that on that date Carl was in arrears in alimony and support payments in the total sum of $330. As a matter of fact, on that date there were pending two proceedings before the trial court growing out of the divorce. On April 3, 1935, Carl had filed a notice of motion to modify the judgment by reducing the $150 monthly award to $75. On August 16, 1935, Edith had filed an affidavit charging that her husband was $330 in arrears in his payments. Neither of these proceedings was ever passed upon by the court.

The appellant, the wife, had no actual notice of the entry of the final decree in 1935, although she admitted that she had heard rumors that it had been entered. She testified that she did not learn that the final decree had been entered until the death of Carl in 1946. She also testified that the

arrearage existing in 1935 had never heen paid. There is, however, most substantial evidence to the contrary. There is ample evidence to support the implied finding that after the entry of the final decree Carl made up all arrearages in the payment of alimony and support, continued to make all payments called for by the decree, and that he gave his children other substantial sums in excess of those provided for in the decree. There is in evidence three receipts for alimony and support signed by Edith, in which, as early as 1939, she acknowledged ''receipt of all monies [sic] due me under and by virtue of an interlocutory decree and final decree of divorce.'' Thus, as early as 1939, Edith knew, and acknowledged she knew, that a final decree of divorce had been secured, and likewise admitted, in writing, that all payments due had been made.

After the divorce had become final, Carl, the husband, adopted the respondent to whom he left, by will, the major portion of his substantial estate. She has been permitted to intervene in this proceeding, and is the real respondent in interest. Carl died May 6, 1946. Over 13 months later, and on June 28, 1947, Edith filed a notice of motion to vacate the final decree on the ground that it had been obtained by fraud on the part of Carl. This motion was denied, and this appeal taken.

It is Edith's theory that if she can have the final decree set aside, she will be entitled to one-half of the estate of Carl under section 201 of the Probate Code. She contends that since the final decree was obtained by the fraud of Carl practiced upon her and the court, such decree must be vacated, and that any delay that occured in enforcing her rights did not prejudicially affect Carl. It was the opinion of the trial court, as expressed in its formal findings contained in the abortive formal order of October 30, 1947, that, while Carl committed a fraud on both the court and the wife, Edith was in no position to raise the point because she learned of the final decree in 1939 but took no steps to protect her rights until June of 1947. The court expressly found that this constituted inexcusable laches.

It seems to be the thought of appellant that, where a final decree is secured based upon a false affidavit, regardless of the passage of time and any change of position of the parties, the court must, as a matter of law, set the decree aside. That is not and should not be the law.

It is, of course, true that a court possesses inherent power to set aside a final decree secured by fraud. (*Miller* v. *Miller,* 26 Cal.2d 119 [156 P.2d 931]; *Rhea* v. *Millsap,* 68 Cal.App.2d 449 [156 P.2d 941].) But because a court possesses power to act in a certain way does not mean, necessarily, that it must act in that way. A court, on such a motion, is entitled to consider the realities and equities of the situation, and may deny relief to a petitioner because of laches, or by reason of an estoppel.

What are the basic facts here that determine the equities of the problem? Carl, in 1935, secured a final decree based upon a false affidavit. Shortly thereafter he paid all sums due to his wife and children, and continued to do so until his death. By 1939, he was completely in the clear. The wife heard rumors of the final decree as early as 1935, but certainly had actual knowledge of it as early as 1939, because she signed at least three documents acknowledging receipt of all sums due her under both the interlocutory and final. Had she acted promptly, and had she had the final decree set aside in 1939, Carl could immediately have petitioned for the entry of another final decree, because at that time he was not in default, and admittedly there never was a reconciliation. But, instead of acting promptly, appellant waited thirteen months after Carl died, and eight years after she had knowledge that a final had been secured, before she asserted any claim at all. During that eight-year period Carl adopted the respondent, drafted a will leaving respondent the major portion of his estate, and died. If the decree were now vacated, the trial court in its discretion, and in order to do equity, could, under section 133 of the Civil Code, enter a new final decree *nunc pro tunc* that would effectively dispose of any claim of appellant. If the decree were now set aside, respondent, a completely innocent party, because of appellant's undue delay and at a time now too late to alter legal relationships, might be deprived of the major portion of her inheritance contrary to the deceased's wishes.

These circumstances certainly justified the trial court in denying relief on the ground that appellant was guilty of laches. In *Hovey* v. *Bradbury,* 112 Cal. 620, 625 [44 P. 1077], the court stated the well settled rule that the doctrine of laches "is usually applied where a plaintiff, with knowledge that his rights have been invaded, or his trust repudiated, has submitted to unconscionable delay, during which other rights have arisen, founded somewhat upon his silence and

acquiesence." In 10 California Jurisprudence, page 530, section 68, the proper rule, amply supported by authorities, is stated as follows: "A person is in equity guilty of laches only where he has, by his conduct or negligence and delay, induced or suffered another to do or abstain from something whereby he might be injured should he be allowed to enforce his rights." Another good statement of the rule is to be found in 10 California Jurisprudence, page 520, section 60: "Laches is defined as 'such neglect or omission to assert a right as, taken in conjunction with the lapse of time, more or less great, and other circumstances causing prejudice to an adverse party, operates as a bar in a court of equity.' "

It is also well settled that: "The existence of laches is determined by the trial court in the light of the facts and circumstances of the particular case." (*Austin* v. *Hallmark Oil Co.*, 21 Cal.2d 718, 734 [134 P.2d 777].)

Appellant urges that there could be no legal prejudice to Carl and to his successors by reason of the delay, because neither Carl nor his successors should be permitted to profit by Carl's fraud. That is a factor that could have induced the trial court to grant the motion to vacate, but it is not *per se* conclusive. A person is not placed forever entirely outside the protection of the law in a particular transaction, because, forsooth, some time in the distant past he was guilty of an improper act. The claimed fraud should have been and was weighed by the court, and it found that the equities in favor of respondent far outweighed those in favor of appellant. With this conclusion we agree.

It is no answer to say, as does appellant, that the fraud was on the court as well as upon the plaintiff, and that the court, in order to vindicate its own honor, should vacate the decree, regardless of the laches of appellant. A court should, of course, preserve its integrity, but it is neither proper nor necessary to sacrifice justice in order to vindicate the honor of the court.

The order appealed from is affirmed.

Bray, J., and Schottky, J. pro tem., concurred.