[No. E021923. Fourth Dist., Div. Two. Aug. 8, 2000.]

In re the Marriage of KAY CAROL and JOHN EDWARD DANCY.
KAY CAROL BLACK, Respondent, v.
JOHN EDWARD DANCY, Appellant.

**[Opinion certified for partial publication.\*]**

---

*Pursuant to California Rules of Court, rules 976(b) and 976.1, this opinion is certified for publication with the exception of parts II. and V.

1144

**COUNSEL**

Covington & Crowe, Donald G. Haslam and Katrina West for Appellant.

Franklin J. Brummett for Respondent.

**OPINION**

**HOLLENHORST, J.**—This case involves a delayed action for delinquent child support, brought 28 years after the initial child support order was made and 10 years after the child reached the age of majority. The trial court granted child support arrearages plus interest. We affirm.

## I.

### FACTS AND PROCEDURAL HISTORY

John and Kay[1] married on April 21, 1967. They had one son, John Edward Dancy, Jr. (John Jr.), born on November 13, 1967, before they separated on September 23, 1968.

On March 7, 1969, an interlocutory judgment of divorce was entered, awarding custody of John Jr. to Kay, subject to reasonable visitation by John. Commencing April 1, 1969, John was to pay Kay $75 per month in child support, until John Jr. reached the age of majority, became self-supporting or until further order of the court. A final judgment of dissolution of marriage was entered on July 30, 1970.

On November 20, 1995, Kay filed an order to show cause to establish child support arrearages, including principal and interest. At trial, Kay sought support arrearages for 160 months, amounting to $12,000, plus $30,302.87 interest, for a total of $42,302.87. The 160 months consisted of the following periods: March 1, 1969, through October 31, 1972 (44 months); May 1, 1973, through April 1978 (60 months); and November 1, 1981, through June 30, 1986 (56 months).

John opposed Kay's claims, arguing that throughout these periods Kay had interfered with his visitation rights and had concealed herself and John Jr. Nevertheless, John declared that he had paid child support whenever he was able to locate them.

The trial court rejected John's arguments, finding John had not made any child support payments and had not established that Kay had concealed John Jr. With the exception of two periods during which Kay acknowledged no child support payments were owed—November 1, 1972, to April 30, 1973, when Kay was receiving public assistance, and April 1, 1978, to October 31, 1981, when John had custody—the court found, as per the interlocutory judgment of divorce, that John owed back child support of $75 per month from April 1, 1969, to June 1986, when John Jr. graduated from high school. The court calculated the indebtedness to be $11,850, plus interest of $21,821.90, for a total of $33,671.90, due as of September 30, 1997. Interest on the unpaid principal was to accrue at the rate of $3.25 per day, commencing October 1, 1997, and continuing until paid.

---

[1]We refer to the parties by their first names, not out of familiarity or disrespect, but because this is the preferred practice in family law cases. (*In re Marriage of Smith* (1990) 225 Cal.App.3d 469, 475, fn. 1 [274 Cal.Rptr. 911].)

John appeals, contending (1) the trial court's finding that Kay did not hide John Jr., was not supported by substantial evidence; (2) the trial court abused its discretion in failing to find Kay was estopped from asserting a claim for child support arrearages due to her concealment of John Jr.; (3) the trial court abused its discretion in failing to find that the doctrine of laches barred enforcement of the child support order; and (4) the trial court erroneously ordered John to pay Kay's attorney fees. We find no merit to these contentions and affirm.

## II.

### SUBSTANTIAL EVIDENCE TO SUPPORT FINDING THAT KAY DID NOT HIDE JOHN JR.*

. . . . . . . . . . . . . . . . . . . . . . . . . . .

## III.

### ESTOPPEL

Because substantial evidence supports the trial court's ruling that Kay did not conceal John Jr., we reject John's next contention that the trial court abused its discretion in failing to find Kay was estopped from asserting a claim for child support arrearages because of that concealment. Given our conclusion in the unpublished portion of the opinion, the claim is patently without merit.

## IV.

### LACHES

■ John next argues that the trial court abused its discretion by failing to find that laches barred enforcement of the child support order.

■ Before addressing this issue, however, we must first determine whether laches was even a viable defense for the trial court to consider in an action for the collection of child support arrearages. This is not an issue of first impression.

Recently, in *In re Marriage of Fogarty & Rasbeary* (2000) 78 Cal.App.4th 1353, 1356, 1363 [93 Cal.Rptr.2d 653] (*Fogarty*), the Second District Court of Appeal concluded that laches is available as a defense in a belated action

---

*See footnote, *ante*, page 1142.

for past due child support "[i]n view of the facts that the defense of laches has historically been applied to California child and spousal support judgments, that the Legislature did not specifically rule out the defense of laches, and that it appears the Legislature, in considering the proposed legislation, believed laches would still be available as a defense . . . ." Upon analysis, we concur with and adopt the holding in *Fogarty*.

## A. Laches as a Defense Against the Collection of Child Support Arrearages.

*Fogarty*'s conclusion was an extension of our holding in *In re Marriage of Plescia* (1997) 59 Cal.App.4th 252 [69 Cal.Rptr.2d 120] (*Plescia*) that the defense of laches is available to thwart a stale attempt to enforce a judgment for past due spousal support. (*Fogarty, supra,* 78 Cal.App.4th 1353, 1356.) In *Plescia*, we explained that "[t]he defense of laches is derived from the maxim that '[t]he law helps the vigilant, before those who sleep on their rights.' (Civ. Code, § 3527.) This has been restated as '[e]quity frowns upon stale demands [and] declines to aid those who have slept on their rights.' [Citation.] [¶] In practice, laches is defined as an unreasonable delay in asserting an equitable right, causing prejudice to an adverse party such as to render the granting of relief to the other party inequitable. [Citation.] Thus, if a trial court finds (1) unreasonable delay; and (2) prejudice, and if its findings are not palpable abuses of discretion, a finding of laches will be upheld on appeal." (*Plescia,* at p. 256.) *Fogarty* describes the doctrine of laches in like terms. (*Fogarty,* at p. 1359.)

### 1. The Equitable Nature of Child Support Proceedings.

We recognize that, unlike spousal support laws, which are considered a form of equitable relief (see *Plescia, supra,* 59 Cal.App.4th 252, 258), child support is strictly a legal right. (Fam. Code, §§ 3585 & 3591, subds. (a) & (b),[3] formerly Civ. Code, § 4811, subd. (a).) However, child support *proceedings,* or where an action to determine arrearages is not a separate action, are equitable proceedings in which the trial court is permitted the

---

[3]All further statutory references are to the Family Code unless otherwise indicated.

Section 3585 provides: "The provisions of an agreement between the parents for child support shall be deemed to be separate and severable from all other provisions of the agreement relating to property and support of the wife or husband. *An order for child support based on the agreement shall be law-imposed* and shall be made under the power of the court to order child support." (Italics added.)

Section 3591 provides in part: "(a) Except as provided in subdivisions (b) and (c), the provisions of an agreement for the support of either party are subject to subsequent modification or termination by court order. [¶] (b) An agreement may not be modified or terminated as to an amount that accrued before the date of the filing of the notice of motion order to show cause to modify or terminate."

broadest discretion in order to achieve fairness and equity. (*In re Marriage of Lusby* (1998) 64 Cal.App.4th 459, 470-471 [75 Cal.Rptr.2d 263]; see also *Fogarty, supra,* 78 Cal.App.4th 1353, 1360 ["family law courts have traditionally been regarded as courts of equity."]; *Plescia,* at p. 257 ["a matter proceeding under the [Family Code,] falls squarely under the jurisdiction of a superior court"].) Moreover, although accrued arrearages are treated like money judgments that may not be retroactively modified, the trial court nevertheless retains equitable discretion in determining whether and the extent to which original support provisions should be enforced. (*Keith G. v. Suzanne H.* (1998) 62 Cal.App.4th 853, 861-862 [72 Cal.Rptr.2d 525]; *Jackson v. Jackson* (1975) 51·Cal.App.3d 363, 366-367 [124 Cal.Rptr. 101].) To this end, the trial court may consider whether there are equitable reasons for refusing to enforce a parent's support obligation in its entirety. (*Ibid.*)

■ "It is a fundamental duty of the court to provide equity to all parties, and fully dispose of the issues between the parties. [Citation.] Further, in effecting a complete disposition of the litigation before it, equity can extend its jurisdiction to matters that ordinarily are subject to legal cognizance only. [Citation.] ■ Thus, unless the Legislature specifically excluded laches from the jurisdiction of the superior court, the court not only had the power to bring this controversy to an equitable conclusion, it had the duty." (*Plescia, supra,* 59 Cal.App.4th 252, 258.)

### 2. No Evidence of Legislative Intent to Specifically Exclude Laches as a Defense to Prevent Collection of Past Due Child· Support.

The significance of the *Fogarty* court's analysis was the fact that when the Legislature amended former Civil Code section 4384.5 (now Fam. Code, § 4502) to provide that judgments for child, family, or spousal support were exempt from any requirement for renewal and were enforceable until paid in full, it did not specifically rule out the defense of laches. (*Fogarty, supra,* 78 Cal.App.4th 1353, 1361-1362.) Instead, the legislative history of section 4502 showed that the Legislature believed that laches would continue to be available as a defense. (*Fogarty,* at p. 1363.) Our own analysis of the issue has similarly disclosed no evidence of legislative intent to specifically exclude laches as a defense to prevent the collection of child support arrearages despite the lack of any statute of limitations or the elimination of the due diligence defense.

### a. The Lack of an Applicable Statute of Limitations.

The wives in both *Plescia* and *Fogarty*, as the parties seeking the support arrearages, argued that support obligations have no applicable statutes of

limitations and are thus always due until paid under section 4502. (*Plescia, supra,* 59 Cal.App.4th 252, 259; *Fogarty, supra,* 78 Cal.App.4th 1353, 1361-1362.) ■ We rejected the argument in *Plescia,* noting that even if we assumed there is no statutory limit on the period of time in which a writ of execution can be brought on a judgment for past due support payments, "this would not ipso jure lead us to the position that the equitable defense of laches can never be raised in opposition to this same writ. Laches should always be available as a defense under the proper circumstances. [¶] . . . It has long been held that the mere enactment of a statute of limitations will not cause the atrophy of laches. Thus, when one party's unjustified delay operates to the injury of another party, the defense of laches may be successfully invoked, even though the lapse of time is *less* than the applicable period of limitations. [Citation.] [¶] . . . [¶]

"The reason that laches may be successfully invoked, even when a relevant statute of limitations has not expired, is because it was the product of a different body of jurisprudence and has different requirements than a statute of limitations; not because laches is a lesser included portion of a statute of limitations. Nothing more than the mere passage of time is required for the statute of limitations to bar an action at law. [Citation.] However, mere passage of time alone will never constitute a proper defense of laches. [Citation.] For laches to apply, the passage of time must be unreasonable, and it must have caused prejudice to the other party. [Citation.] Thus, laches exists independently of a relevant statute of limitations.

". . . When a statute provides for absolutely no period of limitations, this does not mean that the statute provides for absolutely no laches defense. These two doctrines are fundamentally different, and the valid existence of one in no way inhibits or supports the valid existence of the other. This is because ' "[e]quity . . . has its origin . . . in those cases where the law, by reason of its universality, would create injustice in the affairs of men." ' [Citations.] Equity was specifically designed to step in where the law does not work justice." (*Plescia, supra,* 59 Cal.App.4th 252, 259-260.)

■ The court in *Fogarty* concurred with our discussion. (*Fogarty, supra,* 78 Cal.App.4th 1353, 1362.) We add our observation that the statutes relied on by the wife in *Plescia* also apply to child support. Section 5100 states: "Notwithstanding Section 291, *a child or family support order* may be enforced by a writ or execution or a notice of levy pursuant to Section 706.030 of the Code of Civil Procedure or Section 11350.7 of the Welfare and Institutions Code without prior court approval as long as the support

order remains enforceable."[4] (Italics added.) Similarly, section 4502 states: "Notwithstanding any other provision of law, a judgment *for child, family, or spousal support*, including a judgment for reimbursement or other arrearages, is exempt from any requirement that judgments be renewed. *A judgment for child, family, or spousal support*, including all lawful interest and penalties computed thereon, is enforceable until paid in full." (Italics added.) Given the sameness of the statutes, *Plescia*'s analysis regarding the absence of a statute of limitations for spousal support applies equally well to child support. Thus, the absence of a statute of limitations period in which to collect child support arrearages does not foreclose the use of laches as a defense in an appropriate case.

 b. *The Elimination of the Due Diligence Defense.*

"Prior to 1993, a judgment for child or family support could be enforced by writ of execution without prior court approval until five years after the child reached majority, and thereafter only as to amounts that were not more than ten years overdue. . . . [(Civ. Code, former § 4383, subd. (a), repealed by Stats. 1992, ch. 162, § 3, p. 464, operative Jan. 1, 1994 (hereafter, former section 4383).)][5] Beyond these time frames, the trial court had discretion to determine whether to allow enforcement of the judgment. In making this determination, the trial court was required to consider the lack of diligence in pursuing enforcement for more than these specified periods. (Civ. Code, former § 4384, repealed by Stats. 1992, ch. 162, § 3, p. 464, operative Jan. 1, 1994 (hereafter, former section 4384).)

"Then in 1992 the Legislature decreed that (1) a judgment for child or spousal support was exempt from any requirement that judgments be renewed; and (2) such judgment, including lawful interest and penalties, 'is enforceable until paid in full.' (Civ. Code, former § 4384.5, added by Stats. 1992, ch. 718, § 3, pp. 3319-3320; amended by Stats. 1993, ch. 876, § 1, operative Jan 1, 1994, and continued without substantive change in Fam.

---

[4]The entire chapter, beginning with section 5100 and ending with section 5104, concerns enforcement by writ of execution. See section 5100 (enforcement of child or family support orders without prior court approval); section 5101 (enforcement of spousal support without prior court approval); section 5102 (period for enforcement of installment payments); section 5103 (enforcement of support against employee pension benefit plan); and section 5104 (application for writ).

[5]Former Civil Code section 4383 read in part: "[A] judgment, order, or decree for the payment of child [support or family] support may be enforced by a writ of execution without prior court approval until five years after the child reaches the age of majority and, thereafter, for amounts that are not more than 10 years overdue on the date of application therefor. A judgment, order, or decree for the payment of spousal support may be enforced by a writ of execution without prior approval for amounts that are not more than 10 years overdue on the date of the application for the writ. . . ."

Code, § 4502, which adds a new reference to 'family' support.) At the same time, the Legislature repealed former sections 4383 and 4384. And to further emphasize the new order, the Legislature also inserted the same intention in the general provisions for renewal and enforcement of judgments. Specifically, in 1992 it amended Code of Civil Procedure section 683.130 to provide that judgments for child or spousal support are exempt from renewal requirements and are enforceable until paid in full. [Citations.]

"With these legislative changes, spousal and family support orders are enforceable in perpetuity until paid. The lack of diligence defense is gone, as is the trial court's discretion in deciding whether to enforce a judgment beyond the presumptively timely period for enforcement." (*In re Marriage of Garcia* (1998) 67 Cal.App.4th 693, 697-698 [79 Cal.Rptr.2d 242], fn. omitted (*Garcia*) [pre-1993 law applied to enforcement of child and spousal support arrearages accruing under judgment entered in 1966].)[6]

The wife in *Plescia* argued that this elimination of the lack of·diligence requirement implied a legislative elimination of the equitable defense of laches as well. This court disagreed, stating: "It is a fundamental tenet of statutory interpretation that absent any indication that the Legislature intends a statute to supplant common law, the courts should not give it that effect. [Citation.] Of course, this tenet will not apply when a Legislature has minutely described the limitations and exceptions dealing with a given subject matter. [Citation.] In the instant case [wife] urges us to supplant the well-established common law doctrine of laches through the elimination of a diligence requirement for a statute of limitations, an elimination that is only apparent after a close reading of several often modified statutes. While it appears to be true that the consideration of diligence has been eliminated when a court enforces a spousal support order by a writ of execution, this sleight of hand interpretation will not be expanded to areas of the common law long held established. Absent any legislative intention that laches has been supplanted as an equitable defense, we refuse to condone its supplantation by fiat.

---

[6]We observe that inasmuch as support orders entered before 1993 are subject to the prior law, under which the court could consider "diligence" in deciding whether to allow the enforcement of certain support arrearages, and the support order in this case was obviously entered before 1993 (having been entered in 1969), it appears the trial court erred in applying the post-1993 law. Arguing that *Garcia, supra,* 67 Cal.App.4th 693, was filed after he had already filed his opening brief and completed his research, John raises the lack of due diligence in a letter brief dated June 16, 1999. In general, a defendant may rely on appellate cases decided after trial despite the fact that the defense was not raised in the trial court or in the regular briefing in the Court of Appeal. (*Waller v. Truck Ins. Exchange, Inc.* (1995) 11 Cal.4th 1, 24 [44 Cal.Rptr.2d 370, 900 P.2d 619].) However, in our view, the argument made here is essentially one based on the statute of limitations, "an affirmative defense, which unless pleaded or otherwise presented at trial is waived." (*Ventura County Employees' Retirement Association v. Pope* (1978) 87 Cal.App.3d 938, 956 [151 Cal.Rptr. 695].) The issue was not raised below and is therefore waived.

"It is also a fundamental tenet of statutory interpretation that legislation will be interpreted on the assumption that the Legislature was aware of existing judicial decisions. [Citation.] Although there has been very little California litigation on this specific issue, the existence of a laches defense to spousal support arrearages has long been recognized. [Citations.] In other states where this same issue has been considered, laches has been allowed as an equitable defense. [Citation.] Also, in at least 18 other states the defense of laches has been upheld in an action on spousal support arrearages. [Citation.] In addition, there are states that do recognize laches as a valid defense to spousal support, but simply have not had a case which met all of the requirements of laches. [Citation.] It is clear that the laches defense to spousal support is established in judicial opinions reflecting the common law. Assuming that the Legislature was aware of this established law, its failure to use the language of laches weighs in heavily against appellant's argument.

"Moreover, one of the fundamental tools for statutory interpretation is the maxim *expressio unius est exclusio alterius.* [Citation.] This maxim is roughly translated as 'the expression of the one thing implies the exclusion of the other.' [Citation.] In the statutory scheme at hand, the Legislature eliminates from judicial consideration the requirement of diligence in a spousal support action. (See §§ 291, 4502, 5101.) However, it has long been established that the requirements of a valid laches defense are: (1) unreasonable delay, and (2) undue prejudice to the party raising the defense. [Citation.] While diligence may be a factor taken into account when examining the reasonableness of a delay, these two doctrines are certainly not coterminous in definition. Further, diligence has very little to do with the prejudice aspect of the laches defense. Thus, when the Legislature expressly eliminated the diligence defense, it must be seen to have left all other defenses alone, especially since we have no indications to the contrary.

"Taking into account the long common law history of the laches defense, and the large amount of judicial support for it in other states, we find the Legislature's failure to mention laches quite conspicuous. When the Legislature discontinued looking at diligence, it could have eliminated the laches defense as well. It did not do so. Thus, we conclude that the Legislature's decision to leave laches out of its legislative scheme allows that remedy to remain available in appropriate cases." (*Plescia, supra,* 59 Cal.App.4th 252, 261-262.) We believe that includes appropriate child support cases.

3. *Existing Law*

The court in *Fogarty* noted that, although states are divided as to whether laches should apply in an action for past due child support, California is

among the group of states that historically has allowed laches as a defense to such actions. (*Fogarty, supra,* 78 Cal.App.4th 1353, 1360.) Our review of the case law is in accord.

■ As we observed above, under California law, the trial court has discretion to determine the appropriate means of enforcing a judgment for child support, and in exercising that discretion, the trial court can, and should take the equities of the situation into account. (*Keith G. v. Suzanne H., supra,* 62 Cal.App.4th 853, 861.) Thus, California recognizes the equitable defenses of both waiver and estoppel in appropriate cases. (See, e.g., *In re Marriage of Damico* (1994) 7 Cal.4th 673 [29 Cal.Rptr.2d 787, 872 P.2d 126] (*Damico*); *State of Washington ex rel. Burton v. Leyser* (1987) 196 Cal.App.3d 451 [241 Cal.Rptr. 812]; *Graham v. Graham* (1959) 174 Cal.App.2d 678 [345 P.2d 316].)

■ Additionally, the equitable considerations in a laches defense, i.e., undue delay and prejudice to the party asserting the defense, have long been applied as a defense in child support arrearages cases. (See *Di Corpo v. Di Corpo* (1948) 33 Cal.2d 195 [200 P.2d 529] [court denied wife's motion for the issuance of execution as to child support installments accruing over five years from the date of the motion where wife was not seeking funds for the current support of the children but reimbursement for funds she had already expended for their support thus making her lack of diligence in enforcing the unpaid judgment determinative; as to installments accruing within five-year period, husband was not entitled to order recalling writ of execution issued where husband owned unencumbered home worth $5,600 more than amount of such installments and which husband had acquired by disregarding his obligation to support his children]; *Rupp v. Rupp* (1954) 129 Cal.App.2d 23 [276 P.2d 144] [wife denied recovery where she waited 14 years after her former husband ceased making court-awarded child support payments before seeking recovery of the arrearages]; *Lundgren v. Lundgren* (1965) 238 Cal.App.2d 88 [47 Cal.Rptr. 538] [wife not entitled to execution to enforce divorce judgment, which ordered husband to pay child support, where 10 years had lapsed after the date of its entry and husband was 58 years old, weighed approximately 105 pounds despite being six feet two inches tall, was totally disabled with his only income being the $108 per month received from social security].)

Other cases appear to assume the validity of the laches defense without deciding the issue. In *Nealis v. Carlson* (1950) 98 Cal.App.2d 65 [219 P.2d 56], the trial court applied laches to a wife's action against former husband's estate to vacate a final decree of divorce entered in 1935 on the ground it was obtained by former husband's fraud in falsely attesting that all support

alimony and child support payments had been made. Although wife knew of the fraud as early as 1939, she waited until 13 months after her former husband had died before asserting a claim. The Court of Appeal affirmed, stating: "Had [wife] acted promptly, and had she had the final decree set aside in 1939, [husband] could immediately have petitioned for the entry of another final decree, because at that time he was not in default, and admittedly there never was a reconciliation. But, instead of acting promptly, [wife] waited thirteen months after [husband] died, and eight years after she had knowledge that a final [decree of divorce] had been secured, before she asserted any claim at all. During that eight-year period [husband] adopted the respondent, drafted a will leaving respondent the major portion of his estate, and died. . . . If the decree were now set aside, respondent, a completely innocent party, because of [wife's] undue delay and at a time now too late to alter legal relationships, might be deprived of the major portion of her inheritance contrary to the deceased's wishes. [¶] These circumstances certainly justified the trial court in denying relief on the ground [wife] was guilty of laches." (*Id.* at p. 68; see also *Meacham v. Meacham* (1968) 262 Cal.App.2d 248 [68 Cal.Rptr. 746] [laches raised at trial by wife and impliedly applied in wife's favor].)

Recently in *Garcia, supra*, 67 Cal.App.4th 693, on facts remarkably similar to those presented here, husband asserted a laches defense to an order to show cause to establish child and spousal support arrearages brought nearly 30 years after the final judgment of dissolution was entered. While the final judgment of dissolution was filed on June 10, 1966, establishing child support in the amount of $200 per month and $25 a month in spousal support, wife did not seek to enforce it until January 30, 1997, when she filed the order to show cause asking for arrearages and interest in the amount of $65,645.14. (*Id.* at p. 696.) The Court of Appeal accepted the findings on husband's laches defense without determining whether laches was a proper defense to recovery of back child support. (*Id.* at p. 701.)

We have reviewed out-of-state authority and find that most other states allow laches as a defense in an action for back child support. (See, e.g., *Davis v. Dept. of Rev. on Behalf of Davis* (Fla.Dist.Ct.App. 1997) 689 So.2d 433; *State ex rel. Scioto Cty. v. Gardner* (1996) 113 Ohio App.3d 46 [680 N.E.2d 221]; *Haberman v. Haberman* (1995) 216 A.D.2d 525 [629 N.Y.S.2d 65]; *Kerrigan v. Kerrigan* (D.C. 1994) 642 A.2d 1324; and cases collected in Annot., Laches or Acquiescence as Defense, so as to Bar Recovery of Arrearages of Permanent Alimony or Child Support (1981) 5 A.L.R.4th 1015, §§ 3, 6; and later cases, *id.* (1999 supp.).) A minority of states disallow laches as a defense to the collection of past due child support. (See *id.* at §§ 4, 7.)

Moreover, as with spousal support, there is no legislative indication that laches has been supplanted as a defense in an action for back child support.

Although the Legislature eliminated from consideration the requirement of diligence in an action to recover child support arrearages, it did not expressly or impliedly eliminate the laches defense. As we stated previously, "When the Legislature discontinued looking at diligence, it could have eliminated the laches defense as well." (*Plescia, supra*, 59 Cal.App.4th 252, 262.) It did not.

### 4. *Conclusion*

Although we strongly disapprove of the nonpayment of court-ordered child support, we cannot ignore the long common law history of the laches defense in the child support context, the large amount of judicial support for it in this and other states, or the Legislature's failure to mention laches in its revisions to the Family Code, just as we could not ignore them in the spousal support context. Counsel has not cited, nor have we found, any California case or explicit statutory language declaring the equitable defense of laches may not be raised in defense to the collection of child support arrearages.[7] Absent any express case law or statutory language to the contrary, we hold that laches is a viable defense to an action for child support arrearages.

We make our holding keeping in mind the public policy argument that child support is owed to the child rather than the dilatory parent, which strongly militates *against* the application of laches in the child support context (except, perhaps, where the child has reached adulthood and thus will not benefit from the arrearages collection. (Hogoboom & King, Cal. Practice Guide: Family Law (The Rutter Group 1999) ¶ 6:739, pp. 6-285 to 6-286; see also *id.*, ¶ 18:4.3, p. 18-2.) In this regard, it has long been held that "a parent under a court order to pay support for a minor child must pay that support even if the parent with custody interferes with the paying parent's right to visit with the child." (*Damico, supra*, 7 Cal.4th 673, 675, citing *Moffat v. Moffat* (1980) 27 Cal.3d 645 [165 Cal.Rptr. 877, 612 P.2d 967].) "[I]n such circumstances the child's need for sustenance must be the paramount consideration." (*Moffat*, at p. 651.)

The issue is considerably different where the custodial parent does not continuously seek to enforce the payment of child support while the child is a minor but instead seeks past unpaid child support after the "child" has reached the age of majority. (See *State of Washington ex rel. Burton v. Leyser, supra*, 196 Cal.App.3d 451, 457.) In such a case, reimbursement to

---

[7]In fact, we note that laches is one of the stated grounds that an obligor-parent alleged to be in arrears may use as either a defense to a motion for an order requiring the obligor-parent to deposit assets to secure future payments or as a basis for filing a motion to stop a sale or use of assets under section 4631.

the custodial parent will not cognizably advance the child's welfare. (*Ibid.*; see also *Damico, supra,* 7 Cal.4th 673, 685 [Where child for whose support mother sought the arrearages was 35 years old, "[m]other [was] seeking payment of the arrearages to *herself,* not to the child. The harm mother did to the child by denying it father's companionship and financial support should not now entitle her to arrearages, many years later, that can no longer benefit the child."].)

Thus, although we too "agree the principal concern in litigating the right to current and future child support is the welfare of the child[,] . . . when past unpaid support is the issue, the welfare of the child may not be involved" (*State of Washington ex rel. Burton v. Leyser, supra,* 196 Cal.App.3d 451, 457) and in such circumstances, the defense of laches may be appropriately asserted.

Having said that, we note, however, that in most cases, the doctrine of laches will not be supportable as the debtor-spouse will either not be able to show both undue delay and prejudice, or have unclean hands. As noted in the recent case of *In re Marriage of Cutler* (2000) 79 Cal.App.4th 460 [94 Cal.Rptr.2d 156], "[l]aches is an equitable remedy, and as a general rule, a party seeking equitable relief must come into court with clean hands. [Citation.]" (*Id.* at pp. 478-479.) This does not mean that every debtor-spouse has unclean hands merely by virtue of having failed to pay child support. As *Fogarty* notes, that "would mean that laches could never apply to the enforcement of delinquent child support payments, since by . . . definition, the failure to pay child support—regardless of the facts of each case—would automatically render the debtor-spouse with unclean hands" and "that has not been the law in California." (*Fogarty, supra,* 78 Cal.App.4th 1353, 1366.) Rather, the trial court should determine whether there were unclean hands based on the unique facts of each case. We will affirm the trial court's ruling if it is supported by any substantial evidence.

In *Cutler,* the court held that the debtor-spouse, the husband, had unclean hands based on his failure to remain in contact with his children, the necessity of the district attorney's intervention shortly after the judgment was issued, as well as the district attorney's resulting inability to collect, and the husband's complete failure to make any attempt to comply with the judgment.

By contrast, the court in *Fogarty* upheld the trial court's determination that the debtor-father did not have unclean hands: "The trial court weighed the respective histories of both parties and made a decision adverse to appellant[-wife]. The record supports that decision. The normal factual

pattern we see involves the debtor-spouse (usually the father) either running away and hiding, and/or secreting assets, and/or lying about income to the creditor-spouse (usually the mother). As a result, the mother and the child(ren) often live on the edge of poverty, with the mother either on public assistance or holding down several jobs. Such sympathetic facts are absent here." (*Fogarty, supra,* 78 Cal.App.4th 1353, 1366.) Although we note that such sympathetic facts are also absent in our case, the issue was not raised below and we therefore do not address its applicability.

## B. *Application of Laches in This Case.*

■ There remain two procedural obstacles to our consideration of the issue.

First, John did not plead laches as an affirmative defense. ■ As this court stated in *San Bernardino Valley Audubon Society v. City of Moreno Valley* (1996) 44 Cal.App.4th 593, 608 [51 Cal.Rptr.2d 897], "[a]s a general rule, laches must be pleaded as an affirmative defense." Nevertheless, in so stating, we recognized that "courts in extraordinary cases have denied relief on their own motion *when laches is disclosed by the complaint or appears from the evidence even if the defense has not been pleaded.*" (*Id.,* at p. 608, italics added.) ■ The question is whether this can be termed an "extraordinary case." It may be argued that a delayed action for delinquent child support brought 28 years after the initial child support order was made and 10 years after the "child" had reached the age of majority would constitute an "extraordinary case," even if the delinquent parent did not warrant extraordinary consideration.

However, we need not decide this issue because we conclude the issue of laches was properly raised by Kay's pleadings (*Burt v. Burt* (1960) 187 Cal.App.2d 36, 41 [9 Cal.Rptr. 440] ["the general rule is that one who relies upon estoppel or laches as a defense must plead facts constituting such estoppel or laches, *but such rule does not apply where the facts appear on the face of the adversary's pleading*" (italics added)]); the parties' trial briefs (*City and County of San Francisco v. Pacello* (1978) 85 Cal.App.3d 637, 644 [149 Cal.Rptr. 705] [although laches was not pleaded by the party who asserted it, it was extensively argued in their trial brief]; and the evidence (*Rouse v. Underwood* (1966) 242 Cal.App.2d 316, 328 [51 Cal.Rptr. 437] ["irrespective of the technical niceties of defendants' allegations in their answer, the case was tried with the complete understanding that estoppel and laches were presented to the trial judge for his determination"]; *Corrigan v. Stiltz* (1965) 233 Cal.App.2d 381, 387 [43 Cal.Rptr. 548] ["it is also the rule . . . that a court is empowered on its own motion to deny relief where laches

is disclosed by the evidence"]; *Akley v. Bassett* (1922) 189 Cal. 625, 648 [209 P. 576] [" 'it is well settled that the defense of laches need not be pleaded, but when it appears from the evidence that the seeker of relief in equity has been guilty of laches the court will deny such relief *sua sponte'* "]; *Suhr v. Lauterbach* (1913) 164 Cal. 591, 593 [130 P. 2]; *Stevinson v. San Joaquin etc. Co.* (1912) 162 Cal. 141, 143-144 [121 P. 398].)[8] Therefore, under the above authorities, John's failure to plead laches as an affirmative defense does not bar our consideration of the issue on appeal.

The second problem is that John did not request a statement of decision. Under Code of Civil Procedure section 632, a party may, after the court issues its tentative decision, request a statement of decision explaining the basis for its ruling. ■ Where, as here, no statement of decision was requested and there is a conflict in the evidence, "we will infer findings in favor of the judgment . . . . [Citation.]" (*Tyler v. Children's Home Society* (1994) 29 Cal.App.4th 511, 529 [35 Cal.Rptr.2d 291]; *Cohn, supra,* 65 Cal.App.4th 923, 928.) ■ The question of whether a litigant is guilty of laches is a question of fact for the trial court. ■ Because John did not request a statement of decision, we must infer that the trial court decided the issue in favor of Kay as the prevailing party and our review is limited to determining whether there is substantial evidence to support that implied finding. (*Cohn, supra,* 65 Cal.App.4th 923, 928.)

Applying this standard, we conclude the record supports the trial court's implied finding that laches was not established, although Kay waited nearly 30 years before bringing her action for child support arrearages. Delay alone is insufficient; there must be both (1) unreasonable delay, and (2) prejudice to the party asserting laches. (*Plescia, supra,* 59 Cal.App.4th 252, 256.) Kay's stated reasons for the long delay are that (1) she was afraid of John because he had beaten her, her father and John Jr. in the past; and (2) she was only able to commence with this after obtaining emotional and financial

---

[8]It is true that the cases applying laches on the court's own motion have involved equitable as opposed to legal relief (see *ibid.*) and that while there is no longer a distinction between courts of law and courts of equity in this state (Code Civ. Proc., § 307; *Graham v. Light* (1906) 4 Cal.App. 400, 402 [88 P. 373]), courts continue to recognize laches as an equitable remedy not applicable to actions at law. (See, e.g., *Barkley v. City of Blue Lake* (1996) 47 Cal.App.4th 309, 315 [54 Cal.Rptr.2d 679]; *Wells Fargo Bank v. Bank of America* (1995) 32 Cal.App.4th 424, 439 [38 Cal.Rptr.2d 521].) It is also true that child support is a legal right. (§§ 3585, 3900; *Davis v. Davis* (1968) 68 Cal.2d 290, 291 [66 Cal.Rptr. 14, 437 P.2d 502].) However, as we stated above, child support *proceedings*, which include actions to determine arrearages, are equitable proceedings in which the court retains broad equitable discretion in determining whether and the extent to which original support provisions should be enforced, as well as whether any equitable reasons exist for refusing to enforce a support obligation in its entirety. (*In re Marriage of Lusby, supra,* 64 Cal.App.4th 459, 470-471; *Keith G. v. Suzanne H., supra,* 62 Cal.App.4th 853, 861-862; *Jackson v. Jackson, supra,* 51 Cal.App.3d 363, 366-367.)

support from John's other wives. Because these reasons are supported by testimony in the record, even if contradicted by other testimony, we must defer to the trial court's implied finding that Kay's long delay was not unreasonable.

As to prejudice, John stipulated for purposes of trial that he had the ability to pay child support arrearages and reasonable attorney fees and costs. He claims, however, that he was prejudiced because he "had remarried, had additional children to support, and was embroiled in nasty and expensive litigation concerning their welfare." We are not impressed. John's obligation was not extinguished by his acquisition of additional wives and children. (*Long v. Long* (1946) 76 Cal.App.2d 716, 723 [173 P.2d 840].)

John also argues he was prejudiced in that he no longer had any "proof" of past payments of child support that could have been used to offset the final amount owed. According to John, all of his canceled checks in this regard were destroyed and/or lost; his former attorney no longer had them, and his bank did not retain records older than seven years. Although this may have been a valid consideration, the trial court heard the testimony in this regard and impliedly rejected it by not finding laches applicable. We affirm that implied finding.

Having found substantial evidence to support the trial court's implied finding that laches was inapplicable, we conclude the trial court's failure to apply laches was not an abuse of discretion.

## V.

### ATTORNEY FEES*

. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

## VI.

### DISPOSITION

The judgment is affirmed. Respondent is to recover her costs on appeal.

Gaut J., concurred.

**RAMIREZ, P. J.**—I concur with the result achieved in the majority opinion. I write separately because I disagree with the majority's dicta regarding the applicability of laches as a defense to petitions for child support arrears.

*See footnote, *ante*, page 1142.

I agree with the majority on the following points:

1) Substantial evidence supports the trial court's finding that Kay Carol Black (Kay) did not conceal John Edward Dancy, Jr. (John Jr.) during the time periods in question. Thus, John Edward Dancy (John) cannot use concealment as an excuse for failing to meet his obligation to support John Jr. I also agree that this finding merits our rejection of John's assertion that the trial court should have found that Kay was estopped from asserting a claim for child support arrears because she concealed John Jr. Since the trial court found there was no concealment, there can be no estoppel.

2) I also agree with the majority on the issue of attorney fees. John's claim that Kay was not entitled to her attorney fees since she was not entitled to the arrears sought is overcome because we affirm the trial court's decision that Kay was entitled to the arrears awarded. Further, there was substantial evidence of John's ability to pay the attorney fees, and of Kay's need. Therefore John failed to show an abuse of discretion.

3) In addition, if, arguendo, laches was available as a defense in this action, John has not shown that the trial court erred in failing to apply it. Because John did not request a statement of decision, we must assume, by implication, that if the trial court did consider the defense of laches, that it found in favor of Kay. We must uphold this implied finding if it is supported by substantial evidence. (*In re Marriage of Cohn* (1998) 65 Cal.App.4th 923, 928 [76 Cal.Rptr.2d 866].) As indicated in the majority opinion, there was ample evidence upon which the trial court could reasonably have concluded that laches did not apply. The trial court's failure to bar Kay's action for child support arrears based on laches was not error.

Because John is not entitled to the defense of laches under the facts of this case, we need not decide whether it is an available defense in actions on judgments for child support arrears. Statements of law that constitute general observations but are not necessary to the decision, in light of the facts of the case, are dicta, with no force as precedent. (*Fireman's Fund Ins. Co. v. Maryland Casualty Co.* (1998) 65 Cal.App.4th 1279, 1301 [77 Cal.Rptr.2d 296].) Therefore, the majority's conclusion on this point is dicta. (Cf. *In re Marriage of Cutler* (2000) 79 Cal.App.4th 460, 478 [94 Cal.Rptr.2d 156] (*Cutler*) ["We need not, and do not, decide whether the defense of laches is available in general as a defense to payment of a child support judgment, because under the facts of [this] case, laches is not available . . . as a defense"].) Furthermore, the majority's conclusion on this point is incorrect.

I first disagree with the majority because John was required to plead laches as an affirmative defense. (*San Bernardino Valley Audubon Society v.*

*City of Moreno Valley* (1996) 44 Cal.App.4th 593, 608 [51 Cal.Rptr.2d 897].) The record reveals that John did not raise the issue of laches until his opening argument. Since he pled no facts showing that laches applied, John was not entitled to raise the equitable defense.

Contrary to the position adopted in the majority opinion, I do not believe that there were sufficient facts on the face of Kay's pleadings to support the defense of laches. The definition of laches requires that there be an unreasonable delay in asserting an *equitable* right, resulting in prejudice to an adverse party. (*Wells Fargo Bank v. Bank of America* (1995) 32 Cal.App.4th 424, 439 [38 Cal.Rptr.2d 521].) The only element of this definition that appears from the pleadings in this case is that of delay.

The majority cites *Rouse v. Underwood* (1966) 242 Cal.App.2d 316 [51 Cal.Rptr. 437] (*Rouse*) for the proposition that laches, while not raised in the pleadings, was nevertheless properly before the court because the party asserting laches argued it in the trial brief. Initially, this interpretation of *Rouse* makes it distinguishable because the record here is devoid of any evidence that John ever submitted a trial brief addressing laches or any other purported defense. The record does reveal that John's assertion of the defense was conclusory, and that he made no attempt to produce evidence in support of the defense at trial.

In addition, *Rouse* was decided based upon the doctrine of the theory of the case by trial. (*Rouse, supra,* 242 Cal.App.2d at p. 328.) The *Rouse* plaintiff did not assert that laches was not properly before the trial court, but instead argued that the defense was not factually or legally supported. The plaintiff's failure to object to the defense based on a defective pleading was held to preclude that argument on appeal. (*Ibid.*) The doctrine of the theory of the case simply allows a variance in the proof presented at trial. But the scope of what may be presented remains limited by the pleadings. Thus, the pleadings must at least "minimally advise the opposing party of the nature of the defense" before any evidence of that defense may be raised. (*FPI Development, Inc. v. Nakashima* (1991) 231 Cal.App.3d 367, 385 [282 Cal.Rptr. 508].) That minimal advisement did not occur here so the doctrine does not apply.

The majority also concludes that John's failure to plead laches does not bar the defense because the trial court was empowered to raise laches sua sponte, if the evidence supported it. While our decision in *San Bernardino Valley Audubon Society v. City of Moreno Valley, supra,* 44 Cal.App.4th 593, accepts that courts have, in extraordinary cases, applied the doctrine of laches on their own motion, those cases have always involved equitable as

opposed to legal relief. (See, e.g., *Akley v. Bassett* (1922) 189 Cal. 625, 647-648 [209 P. 576] [laches may be invoked by court against one seeking equitable relief]; *Suhr v. Lauterbach* (1913) 164 Cal. 591, 593 [130 P. 2] [court may invoke laches where evidence shows seeker of relief *in equity* is guilty of laches]; *Corrigan v. Stiltz* (1965) 233 Cal.App.2d 381 [43 Cal.Rptr. 548] [laches would only be invoked by the trial court to apply to causes of action in equity].) Child support is not equitable in nature, but is a legal right. (Fam. Code, §§ 3585, 3900; *Davis v. Davis* (1968) 68 Cal.2d 290, 291 [66 Cal.Rptr. 14, 437 P.2d 502].) Recognizing that jurisdiction over law and equity has long been combined in the courts of this state (Code Civ. Proc., § 307; *Graham v. Light* (1906) 4 Cal.App. 400 [88 P. 373]), still, trial courts should not be allowed to apply, of their own accord, the equitable remedy of laches to an action at law, especially when facts supporting the defense have not first appeared in the pleadings.

More important, however, than John's failure to plead laches, is my disagreement with the majority's statement that the equitable defense is available at all in actions on judgments for child support arrears. Even though, as we have observed, there is no distinction between courts that may hear matters of law and equity, courts have continued to recognize that laches is an equitable remedy, not applicable to actions seeking legal remedies. (See, e.g., *Barkley v. City of Blue Lake* (1996) 47 Cal.App.4th 309, 315 [54 Cal.Rptr.2d 679] ["It is well settled that the equitable defense of laches does not apply in an action based on a judgment, which is an action at law"]; *Wells Fargo Bank v. Bank of America, supra,* 32 Cal.App.4th at p. 439 [". . . the laches defense is unavailable in an action at law for damages . . ."], citing *Abbott v. City of Los Angeles* (1958) 50 Cal.2d 438, 462 [326 P.2d 484]; *Unilogic, Inc. v. Burroughs Corp.* (1992) 10 Cal.App.4th 612, 619 [12 Cal.Rptr.2d 741] ["The equitable doctrine of laches has a legal equivalent in the statutes of limitations. To allow a laches defense in a legal action would be to override a time limit mandated by the Legislature"]; and *Pratali v. Gates* (1992) 4 Cal.App.4th 632, 645 [5 Cal.Rptr.2d 733] ["The equitable defense of laches does not apply in an action at law"], but compare *In re Marriage of Comer* (1996) 14 Cal.4th 504, 514-515 [59 Cal.Rptr.2d 155, 927 P.2d 265] [court recognized application of equitable defense of estoppel in cases involving child support arrears, citing *In re Marriage of Damico* (1994) 7 Cal.4th 673 [29 Cal.Rptr.2d 787, 872 P.2d 126]].) Because child support is a legal right, the equitable defense of laches cannot bar enforcement of a judgment for child support. (Fam. Code, §§ 3585, 3900; *Smith v. Smith* (1954) 125 Cal.App.2d 154, 164 [270 P.2d 613]; *Pratali v. Gates, supra,* 4 Cal.App.4th at p. 645.)

The majority makes a distinction that while child support is a legal right, child support *proceedings* are equitable in nature. It then concludes that a

court may contemplate whether equitable considerations back a refusal to enforce a support obligation at all. (Maj. opn., *ante,* at pp. 1148-1149.) The cases cited do not support that conclusion.

For example, *In re Marriage of Lusby* (1998) 64 Cal.App.4th 459 [75 Cal.Rptr.2d 263] concerned a postdissolution proceeding to adjudicate the former wife's request for certain add-on expenses to support the two minor children of the marriage. The trial court did recognize that family law judges retain " ' "traditional discretionary authority to adjust child support orders in individual cases where fairness requires it." ' " (*Id.* at p. 471.) However, ultimately the award was not based upon the court's equitable powers, but upon the statutory provisions of the Family Code. (*Id.* at pp. 473-475.) In addition, the question confronting the trial court was the modification of the level of support that would then be owed prospectively. It was nowhere discussed that the court had discretionary or equitable powers to alter or extinguish an amount of child support that had already been awarded and accrued, as would result in the instant case.

The same can be said for *Keith G. v. Suzanne H.* (1998) 62 Cal.App.4th 853 [72 Cal.Rptr.2d 525] (*Keith G.*) and *Jackson v. Jackson* (1975) 51 Cal.App.3d 363 [124 Cal.Rptr. 101]. Both of those cases recognize that a trial court maintains equitable jurisdiction to determine the *manner* in which a judgment for child support will be paid. However, neither case stands for the proposition that those equitable powers allow the court to extinguish the accrued arrears altogether. The Court of Appeal held that the trial court could 1) give credit for past overpayment; 2) permit partial enforcement of, or quash a writ of execution against a parent in arrears who, during the period in question, had sole physical custody of the child; or 3) take into consideration whether the parent had satisfied or otherwise discharged the support obligation. (*Keith G., supra,* 62 Cal.App.4th at pp. 858-859; *Jackson v. Jackson, supra,* 51 Cal.App.3d at p. 368.) The Court of Appeal did not hold that a trial court had "equitable discretion" to determine that the arrears were not required to be paid in any form. In fact, *Keith G.* holds that the trial court lacks jurisdiction to modify or terminate support that has already accrued. (*Keith G., supra,* 62 Cal.App.4th at p. 858; Fam. Code, § 3651, subd. (c); see also *In re Marriage of Comer, supra,* 14 Cal.4th at pp. 541-542 (conc. opn. of Baxter, J.) [judgment for child support is a vested property right involving due process considerations].) This interpretation of these cases comports with Family Code section 4502 that provides, in pertinent part, that "[a] judgment for child, family, or spousal support, including all

lawful interest and penalties computed thereon, is enforceable until paid in full."[1]

Since this case was argued, two opinions have been published that bear on these issues. In *In re Marriage of Fogarty & Rasbeary* (2000) 78 Cal.App.4th 1353 [93 Cal.Rptr.2d 653] (*Fogarty*), the Second District, Division Two, held that laches is a defense in an action for child support arrears. The court, citing our decision in *Plescia, supra,* 59 Cal.App.4th 252, based its holding on a determination that family law courts have traditionally been regarded as courts of equity and that child support, like spousal support, is inherently equitable in nature. *Fogarty*'s reliance on *Plescia* is misplaced. Child support differs from spousal support, in that it is not an equitable, but a legal right. Further, while *Fogarty* states that laches has been a defense to stale child support claims for over 50 years, it cites no cases that stand for that proposition.

*Cutler,* recently decided by the Fifth District, thoroughly analyzes the changes in the applicable statutes and illustrates the *Fogarty* court's error in relying on the purported historical or traditional use of laches as a defense to child support arrears actions. The cases that the *Fogarty* court and the majority in this case rely on applied former Code of Civil Procedure section 681, which specified that money judgments were extinguished if not enforced within five years (later modified to 10 years). This is not a laches defense, but rather a statute of limitations defense. Further, as the *Cutler* court observes, in 1982 the successor statutes to former Code of Civil Procedure section 681 explicitly provided that they do not apply to either child or spousal support judgments. (*Cutler, supra,* 79 Cal.App.4th at pp. 469-470; Code Civ. Proc., § 683.310.) Thus, the Legislature has specifically stated that the authorities that the *Fogarty* court and the majority rely on do not apply.

In addition, the cases that *Fogarty* and the majority rely on established lack of diligence as a defense, not laches. As we observed in *Plescia, supra,* 59 Cal.App.4th at page 262, lack of diligence and laches are not the same. And, because Family Code section 4502 applies notwithstanding any other provision of law, it prevails over Family Code section 291, which authorizes a court to consider lack of diligence in enforcing a judgment. While it may have been an issue in cases such as this one, where support orders were entered before 1993, had it been raised below, lack of diligence is no longer

---

[1]In *In re Marriage of Plescia* (1997) 59 Cal.App.4th 252 [69 Cal.Rptr.2d 120] (*Plescia*), this court held that laches was a valid defense to actions for spousal support arrears, in spite of Family Code section 4502. However, spousal support is an equitable rather than a legal right. Thus *Plescia* is distinguishable.

a valid consideration in enforcing a support judgment. (*In re Marriage of Garcia* (1998) 67 Cal.App.4th 693, 697-698 [79 Cal.Rptr.2d 242]; see also *Cutler, supra,* 79 Cal.App.4th at p. 475.) *Fogarty's* analysis is fatally flawed. Thus, the majority's reliance upon it is misplaced. Further, in *Nealis v. Carlson* (1950) 98 Cal.App.2d 65 [219 P.2d 56], cited by the majority, the court held that laches barred an attempt to set aside a decree of divorce, thus preventing a woman from obtaining half of her deceased ex-husband's estate. It did not consider the application of laches to support arrears of any kind, and therefore provides no authority on that point.

It has repeatedly been observed that requiring parents to fulfill their moral and legal responsibilities to provide for their children is of paramount importance. The noncustodial parent has an obligation to pay child support regardless of whether the custodial parent actively seeks it. (See, e.g., *Moss v. Superior Court* (1998) 17 Cal.4th 396, 422-424 [71 Cal.Rptr.2d 215, 950 P.2d 59]; *In re Marriage of Comer, supra,* 14 Cal.4th at pp. 529-530; *In re Marriage of Padilla* (1995) 38 Cal.App.4th 1212, 1218 [45 Cal.Rptr.2d 555].) It is the strength of this public policy that has established child support as a legal right and a primary parental duty, whereas spousal support has remained an equitable consideration. Insisting on the enforcement of judgments for child support until they are paid in full reinforces the fundamental importance of providing for children when they are young and need the support by placing parents on notice that the obligation will not evaporate if ignored long enough, and creates a strong incentive to avoid nonpayment.

For these reasons I do not join in the majority opinion.

Appellant's petition for review by the Supreme Court was denied November 15, 2000.