Opinion
PARRILLI, J.
Is laches available as a defense to the payment of child support arrearages? We join the Second and Fourth District Appellate Courts recently facing this issue in holding that it is. We also conclude the trial court’s finding of laches was supported by the evidence.
Background
Harold and Lesley Copeman divorced in 1985. The parties agreed that Lesley would have custody of their two sons, Michael and Steven, and Harold would pay child support of $400 per month until the children reached age 18. Harold also agreed to provide medical and dental insurance for the children and pay one-half of all uninsured medical expenses. Finally, Harold promised to pay spousal support of $150 per month for two years.
On June 24, 1987, the parties modified the support agreement. This stipulation and order provided that, effective January 1, 1987, Harold would *327 pay $450 per month in child support. On January 1, 1988, this amount would increase by 10 percent (to $495); on January 1, 1989, the payment would increase by another 10 percent (to $544.50); and on January 1, 1990 the payment would increase again by 10 percent (to $598.95).[1] The order did not provide for any further increases in child support. Both parties agreed to the scheduled increases “subject to [their] right to prove to the satisfaction of the court that such increase is not justified by the economic or other circumstances of the parties.” Subject to one final payment, the order terminated Harold’s obligation to pay spousal support.
From January 1988 until December 1998, Harold continued to pay child support of $450 every month. After his older child emancipated in December 1998, Harold reduced the support payments to $225 per month. Lesley never asked Harold for the scheduled support increases, nor did they ever discuss the matter. Then, on October 25, 1999, the Alameda County District Attorney filed a declaration on Lesley’s behalf, seeking accumulated child support arrearages and interest totaling $30,688.93. Harold filed a notice of motion to expunge all arrears, and the court held a contested hearing on the motion. On the date of the hearing, the children were 19 and 16 years old.
Lesley testified she did not ask for the increases before October 1999 because she did not want to involve her sons in a conflict. She also described herself as a “very passive personality” and thought she did not have the financial means to pursue the additional support. She did not know until recently that the district attorney could assist her. Lesley never told Harold he did not have to pay the additional support, however.
Harold admitted he did not pay the scheduled increases. However, Harold regularly paid many of the children’s expenses even though he was not obligated to by the support order. He paid for half, or more, of their extracurricular expenses, including many expenses related to their participation in sports. He paid for the older son’s driver education, auto insurance and car maintenance. Lesley often presented him with written statements outlining expenses she wanted reimbursed. Harold also paid a portion of the children’s daycare expenses for one year, during which time Lesley agreed to reduce his support obligation by $50 per month. Harold also funded several “shopping sprees” for the boys. Harold believed he and Lesley had agreed to share these extra expenses in lieu of the 10 percent child support increases. He did not keep all his bank statements or receipts for credit card or cash purchases; nevertheless, he produced some receipts and cancelled checks reflecting $12,894.71 in child-related expenditures. Harold testified that he could not have afforded to pay the child support increases in addition *328 to the extracurricular activities he funded, and he would not have contributed to expenses beyond the order had he known Lesley would pursue the additional support. He also would have sought a modification of the support order.
The court found that the doctrine of laches applied and, on that basis, expunged all child support arrears through November 1998. The court reserved jurisdiction on arrears that accrued after November 1998, and Harold later agreed to pay child support of $547 per month for the younger son. The Attorney General appealed the arrearage issue on Lesley’s behalf.
Discussion
I. Laches Is Available as a Defense to Child Support Arrearages
Lesley contends the trial court’s order runs afoul of several sections of the Family Code.[2] She notes that a judgment for child support “is enforceable until paid in full,” (§ 4502) and “may not be set aside simply because the court finds that it was inequitable when made, nor simply because subsequent circumstances caused the support ordered to become excessive or inadequate.” (§ 3692.)
“Prior to 1992, judgments for child and spousal support expired within a stated period of years. Accordingly, such judgments had to be periodically renewed, similar to any other civil judgment.” (In re Marriage of Fogarty & Rasbeary (2000) 78 Cal.App.4th 1353, 1359 [93 Cal.Rptr.2d 653] (Fogarty).) Beyond the statutory time frames, “the trial court had discretion to determine whether to allow enforcement of the judgment. In making this determination, the trial court was required to consider the lack of diligence in pursuing enforcement for more than these specified periods. [Citation.]” (In re Marriage of Garcia (1998) 67 Cal.App.4th 693, 697 [79 Cal.Rptr.2d 242].)
“In 1992, when family law proceedings were still within the Civil Code, the Legislature amended former Civil Code section 4384.5 to provide that judgments for child support and spousal support were exempt from renewal, and that those judgments were enforceable until fully paid. [H] In 1993, the Family Code supplanted the Civil Code as to family law matters. Family Code section 4502 took the place of former Civil Code section 4384.5. The new section reads as follows: ‘Notwithstanding any other provision of law, a judgment for child, family, or spousal support, including a judgment for reimbursement or other arrearages is exempt from any requirement that *329 judgments be renewed. A judgment for child, family, or spousal support, including all lawful interest and penalties computed thereon, is enforceable until paid in full.’ ” (Fogarty, supra, 78 Cal.App.4th at p. 1359.) The Legislature also amended Civil Code section 683.130 in 1994 to exempt judgments for spousal or child support from the renewal requirements that must be met for enforcement of other civil judgments. (78 Cal.App.4th at p. 1359.)
“With these legislative changes, spousal and family support orders are enforceable in perpetuity until paid. The lack of diligence defense is gone, as is the trial court’s discretion in deciding whether to enforce a judgment beyond the presumptively timely period for enforcement.” (In re Marriage of Garcia, supra, 67 Cal.App.4th at p. 698.)
We are not the first court to address whether these amendments rendered the defense of laches unavailable to the enforcement of support judgments. In In re Marriage of Plescia (1997) 59 Cal.App.4th 252 [69 Cal.Rptr.2d 120] (Plescia), the appellant argued that amendments to the Family Code rendering support judgments “enforceable until paid in full” (§ 4502) eliminated the statute of limitations for enforcement of her spousal support judgment and, by implication, eliminated the laches defense too. (Plescia, supra, at p. 259.) Division Two of the Fourth District Court of Appeal discussed the scope of the superior court’s equity jurisdiction and determined, “unless the Legislature specifically excluded laches from the jurisdiction of the superior court, the court not only had the power to bring this controversy to an equitable conclusion, it had the duty. Therefore, respondent’s equitable defense of laches, raised during the equitable disposition of appellant’s spousal support order, should be affirmed absent any explicit statutory language to the contrary.” (Id. at p. 258.) The Plescia court found no such exclusion of the laches defense. Statutory abolition of the limitations period did not impliedly destroy the traditional defense of laches, since the two doctrines are fundamentally different. (Id. at p. 260.) Nor could amendments removing “lack of diligence” as a consideration in enforcement proceedings be construed as an implied elimination of laches, which requires both delay and undue prejudice. (Id. at pp. 260-262.) Considering the long history of the laches defense, its prevalent use in other states, and the Legislature’s failure to mention laches in the applicable statutes, Plescia concluded that laches remains an available defense to collection of spousal support arrears. (Id. at p. 262.)
Last year, Division Two of the Second District Court of Appeal extended Plescia’s holding to apply to past due child support as well. (Fogarty, supra, 78 Cal.App.4th at p. 1356.) Fogarty observed that, although authorities *330 across the country are split as to whether the equitable defense of laches can apply to execution on a judgment for child support, California has historically allowed laches as a defense. (Id. at p. 1360.) The court concurred with Plescia's analysis of legislative intent, noting that the Legislature was presumably aware of the historical recognition of laches as a defense to collection of stale support judgments. (Id. at p. 1362.) In addition, Fogarty reviewed extrinsic sources of legislative intent behind the amendment of Civil Code former section 4384.5 (now Fam. Code, § 4502). This review unearthed evidence that the Legislature believed laches would remain available as a defense to stale claims: “The history . . . shows that the Legislature was aware of the problem with enforcement of stale judgments and the potential conflict between various enforcement statutes. Most important to our resolution of this issue, the Senate Committee on the Judiciary held a hearing on the proposed legislation on August 18, 1992. The report of that body contains the following statement: ‘Concern has been expressed that [the] provision [to exempt support judgments from periodic renewal requirements] would remove the custodial parent’s incentive to diligently seek action on a support order. However, the obligor parent could raise equitable defenses, such as laches, to prohibit an action to enforce an extremely old order.’ [Citation.]” (Fogarty, supra, 78 Cal.App.4th at p. 1363.)
Recently, the court that decided Plescia had occasion to consider whether laches may be asserted as a defense to collection of child support arrearages. (In re Marriage of Dancy (2000) 82 Cal.App.4th 1142 [98 Cal.Rptr.2d 775] (Dancy).)[3] The court reviewed the analysis of legislative intent in Plescia and determined its conclusions were equally appropriate in the context of child support. (Id. at pp. 1149-1153.)
Child support differs from spousal support in that it is a legal, not an equitable, right. (See § 3585 [“An order for child support based on the [parents’] agreement shall be law-imposed . . . .”].) “However, child support proceedings ... are equitable proceedings in which the trial court is permitted the broadest discretion in order to achieve fairness and equity. (In re Marriage of Lusby (1998) 64 Cal.App.4th 459, 470-471 [75 Cal.Rptr.2d 263]; see also Fogarty, supra, 78 Cal.App.4th 1353, 1360 [‘family law courts have traditionally been regarded as courts of equity.’]; Plescia, [supra, 59 Cal.App.4th] at p. 257 [‘a matter proceeding under the [Family Code,] falls squarely under the jurisdiction of a superior court’].) Moreover, although accrued arrearages are treated like money judgments that may not be retroactively modified, the trial court nevertheless retains equitable discretion in determining whether and the extent to which original support provisions should be enforced. [Citations.] To this end, the trial court may *331 consider whether there are equitable reasons for refusing to enforce a parent’s support obligation in its entirety. [Citation.]” (Dancy, supra, 82 Cal.App.4th at pp. 1148-1149; but see id. at pp. 1163-1165 (conc. opn. of Ramirez, P. J.) [arguing that laches, as an equitable defense, cannot bar enforcement of the legal right to child support].)
The majority in Dancy therefore concluded: “Although we strongly disapprove of the nonpayment of court-ordered child support, we cannot ignore the long common law history of the laches defense in the child support context, the large amount of judicial support for it in this and other states, or the Legislature’s failure to mention laches in its revisions to the Family Code, just as we could not ignore them in the spousal support context. Counsel has not cited, nor have we found, any California case or explicit statutory language declaring the equitable defense of laches may not be raised in defense to the collection of child support arrearages.[4] Absent any express case law or statutory language to the contrary, we hold that laches is a viable defense to an action for child support arrearages.” (Dancy, supra, 82 Cal.App.4th at p. 1156.)
Despite these authorities, Lesley contends the application of laches to bar her recovery of child support arrearages violated several provisions of the Family Code. In'addition to section 4502, discussed at length in Plescia, Fogarty and Dancy, Lesley asserts the trial court’s ruling was an improper retroactive modification of a support order (§ 3651, subd. (c)) and an unauthorized setting aside of the support order (§ 3692).[5] However, like section 4502, these statutes do not mention laches, nor do they distinguish between spousal and child support. The Legislature’s failure to mention laches in section 3692 is especially significant because this statute was enacted in 1999—two years after the Plescia decision. (Stats. 1999, ch. 653, § 6.)[6]
Lesley also relies heavily on In re Marriage of Hamer (2000) 81 Cal.App.4th 712 [97 Cal.Rptr.2d 195] (Hamer), a recent decision from *332 Division Four of this District. However, the main issue in Hamer was not laches, but whether a spouse waived the right to collect child and spousal support arrearages due pursuant to a 1993 judgment. (Id. at p. 718.) In the absence of an express agreement by the spouse to forgo a portion of the judgment, Hamer reasoned that the spouse’s mere acquiescence in accepting lower payments was not so inconsistent with an intent to enforce the judgment as to constitute a waiver. (Id. at pp. 720-722.) Although Hamer also questioned the validity of the “waiver” defense in light of recent amendments to the Family Code (id. at p. 722), the court did not extend these criticisms to the doctrine of laches. On the contrary, the court cited the holdings of Plescia and Fogarty and assumed laches was an available defense. It did not apply under the circumstances, however, because the obligor spouse demonstrated no undue prejudice from the obligee’s four-year delay in seeking enforcement. (Id. at p. 723.)
Nor does In re Marriage of Cutler (2000) 79 Cal.App.4th 460 [94 Cal.Rptr.2d 156] (Cutler) support Lesley’s argument. Addressing the issue of laches in dicta, the Cutler court specifically declined to decide whether laches is available in general as a defense to payment of child support arrearages because the record contained no evidence of undue prejudice and, furthermore, demonstrated that the obligor spouse had unclean hands. (Id. at pp. 478-479.)
Passages in Hamer, Cutler and other cases concerning statutory abrogation of the “lack of diligence” defense to enforcement of support orders do not support Lesley’s position because laches is not synonymous with lack of diligence; laches requires the additional element of undue prejudice. (Plescia, supra, 59 Cal.App.4th at pp. 260-262.) We are persuaded by the thorough analyses of laches and legislative history in Plescia, Fogarty and Dancy. Accordingly, we join courts in the Second and Fourth Districts of the Court of Appeal in holding that laches remains available as a defense to payment of child support arrearages.
Even if laches may apply as a general matter, however, we must consider whether public policy precludes the application of laches to prevent payment of child support when the child is still a minor. The court in Dancy described this policy argument: “We make our holding keeping in mind the public policy argument that child support is owed to the child rather than the dilatory parent, which strongly militates against the application of laches in the child support context (except, perhaps, where the child has reached adulthood and thus will not benefit from the arrearages collection). [Citations.] . . . ffl] The issue is considerably different where the custodial parent *333 does not continuously seek to enforce the payment of child support while the child is a minor but instead seeks past unpaid child support after the ‘child’ has reached the age of majority. [Citation.] In such a case, reimbursement to the custodial parent will not cognizably advance the child’s welfare. [Citations.] [H] Thus, although we too ‘agree the principal concern in litigating the right to current and future child support is the welfare of the child[,] . . . when past unpaid support is the issue, the welfare of the child may not be involved’ [citation] and in such circumstances, the defense of laches may be appropriately asserted.” (Dancy, supra, 82 Cal.App.4th at pp. 1156-1157.)
The children in Dancy and Fogarty were legal adults by the time their parents sought to recover child support arrearages. (Dancy, supra, 82 Cal.App.4th at p. 1146; Fogarty, supra, 78 Cal.App.4th at p. 1357.) Our case presents a more difficult question because both of the children still lived at home, and one was still a minor, when Lesley pursued the child support arrearages. While we agree that public policy strongly favors enforcement of the child support judgment under such circumstances, we decline to adopt a bright-line rule that forbids application of the laches defense when any of the children remains a minor. Lesley directs us to no statutory support for this distinction, nor would such a rule comport with the equitable nature of the laches defense. (See Dancy, supra, 82 Cal.App.4th at pp. 1148-1149.) We think the better solution is for the trial court to consider the age of any minors still living at home in determining whether an obligee spouse’s delay in pursuing support arrearages is unreasonable.
II. Laches Finding Was Adequately Supported
“Generally, the existence of laches is a question of fact to be determined by the trial court in light of all the applicable circumstances, and in the absence of a palpable abuse of discretion, the trial court’s finding of laches will not be disturbed on appeal. [Citation.]” (Plescia, supra, 59 Cal.App.4th at p. 256.) “In practice, laches is defined as an unreasonable delay in asserting an equitable right, causing prejudice to an adverse party such as to render the granting of relief to the other party inequitable. [Citation.] Thus, if a trial court finds (1) unreasonable delay; and (2) prejudice, and if its findings are not palpable abuses of discretion, a finding of laches will be upheld on appeal.” (Ibid.)
Lesley waited nearly 12 years before pursuing the child support increases due under the modified support judgment. During this time, she never mentioned the support arrearages or asked Harold to pay them, although she did give Harold written lists of the children’s expenses that she *334 wanted reimbursed. The trial court may have rejected, or found unreasonable, Lesley’s explanation that she delayed due to her “passive personality,” desire to avoid involving her sons in a conflict, and ignorance of the district attorney’s enforcement assistance. On this record, the trial court did not palpably abuse its discretion in finding Lesley’s 12-year delay unreasonable. (Cf. Plescia, supra, 59 Cal.App.4th at pp. 256-257 [upholding trial court finding that nine-year delay in seeking spousal support was unreasonable].)
Likewise, the record supports the trial court’s finding that Lesley’s delay in pursuing the support arrearages caused Harold undue prejudice. Harold contributed to or paid for many of the children’s “extracurricular” expenses, although the support order did not obligate him to do so. Although Harold did not keep all bank statements and receipts for items purchased during the past 12 years, he was able to document over $12,000 in such child-related expenditures. Harold testified that he could not have afforded to pay for all of these expenses in addition to the child support increases. Moreover, Lesley’s delay in asking for the arrearages prevented him from seeking a modification of the support order and from keeping complete records documenting the additional financial support he provided his sons. These facts adequately demonstrate undue prejudice and support the trial court’s finding of laches. (See Fogarty, supra, 78 Cal.App.4th at p. 1365 [prejudice demonstrated by financial contributions made on child’s behalf and obligor’s failure to keep records of all payments].)
Disposition
The order expunging child support arrears is affirmed. Respondent to recover his costs on appeal.
Corrigan, Acting P. L, and Homer, J.,* concurred.
Appellant’s petition for review by the Supreme Court was denied September 26, 2001.

These calculations are our own; they are not stated in the order.

All statutory references are to the Family Code unless otherwise stated.

Dancy was decided over three months before the Attorney General filed its opening brief in support of Lesley’s appeal. (See Dancy, supra, 82 Cal.App.4th 1142.) The Attorney General’s failure to discuss, or even mention, Dancy is inexplicable.

“In fact, we note that laches is one of the stated grounds that an obligor-parent alleged to be in arrears may use as either a defense to a motion for an order requiring the obligor-parent to deposit assets to secure future payments or as a basis for filing a motion to stop a sale or use of assets under [Family Code] section 4631.”

Section 3651, subdivision (c) states, in relevant part: “[A] support order may not be modified or terminated as to an amount that accrued before the date of the filing of the notice of motion or order to show cause to modify or terminate.”
Section 3692 states: “Notwithstanding any other provision of this article, or any other law, a support order may not be set aside simply because the court finds that it was inequitable when made, nor simply because subsequent circumstances caused the support ordered to become excessive or inadequate.”

Nor have we found any mention of laches in the legislative history of Assembly Bill No. 380 (1999-2000 Reg. Sess.), which enacted section 3692. Indeed, rather than narrowing the court’s power to modify support judgments, this bill broadened the court’s ability to set aside *332 support orders obtained as a result of actual fraud, perjury or lack of notice. (Stats. 1999, ch. 653, § 6.)

Judge of the Alameda Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.