[No. D024029. Fourth Dist., Div. One. June 2, 1998.]

In re the Marriage of ANDREA F. LUSBY and EDWARD W. LUSBY, JR.
ANDREA F. LUSBY, Appellant, v.
EDWARD W. LUSBY, JR., Appellant.

## COUNSEL

Sharron Voorhees for Appellant Wife.

James S. Gordon for Appellant Husband.

## OPINION

**HUFFMAN, Acting P. J.**—Edward W. Lusby, Jr. (Father), appeals the postdissolution findings and order after hearing of the family court, setting his percentage contribution at 27 percent toward certain add-on expenses for child support of the two minor children of his marriage to Andrea F. Lusby (Mother). (Fam. Code, §§ 4061, 4062.)[1] Mother's cross-appeal challenges the 27 percent figure, contending it should have been 50 percent, and also seeks to reallocate other retroactively ordered child support. We find no lack

---

[1]All statutory references are to the Family Code unless otherwise noted.

of jurisdiction or abuse of discretion in allocating the expenses as was done here, and affirm the order.

### FACTUAL AND PROCEDURAL BACKGROUND

The parties' briefs make various representations about the events and agreements leading up to trial. The bare record shows that in April 1993, after a 19-year marriage, Mother filed for dissolution and obtained an order to show cause (OSC) regarding child support. Father, a molecular biologist, was unemployed at the time, and the parties stipulated in June 1993 that the issue of child support would be continued until the time of trial (anticipated to be September 1993), with the family court to reserve jurisdiction to make an order for support retroactive to April 1993.

After several continuances, the matter went to trial in August 1994 and judgment was filed January 25, 1995, and entered January 26, 1995. Regarding child support, the commissioner ordered Father to pay $313 per child (for two children) effective August 1, 1994. Child support arrearages owed by Father to Mother through July 1994 (a 15-month period) were set at $2,400 (i.e., $80/month per child, set according to Father's then unemployment pay of $919 net, compared to Mother's net income of $2,001, with a 20 percent time share factor). The parties agreed that future noncovered medical, dental, optical, and psychological costs for the children, as well as the work-related day care, would be shared equally between them.

Two weeks after judgment was entered, Mother brought an OSC regarding mandatory add-on child support expenses (i.e., for one-half of the 1993 and 1994 child care and unreimbursed medical expenses under section 4062). Her declaration represented that although the trial court (commissioner) had made an award of retroactive child support ($160/month for the past 15 months), it had "failed to make an award of mandatory 'add-ons' pursuant to [section] 4062 for necessary child care costs and the children's uninsured health care costs *and [the court] requested that these items be presented by way of a post-Judgment Order to Show Cause.* Therefore, I am requesting such relief at this time." (Italics added.) These costs ($10,514.02 total) were incurred during the period of Father's unemployment (April 1993-July 1994).

Father's responsive declaration denied that the trial court had requested that the issue of add-on child support be presented by way of a postjudgment OSC, or that Mother had ever presented a request for an order awarding such add-on support before or at the time of trial. Father explained, "The trial in this matter lasted over three hours spread over two days. Judge Clements

threatened that there would be a mistrial of the case if the matter was not concluded on the second day after at least an additional one hour of testimony. The parties did stipulate at the trial to share equally the work-related daycare and the future non-covered minor children's medical [etc.] expenses. No mention was ever made of these now alleged expenses at the time of trial. [¶] . . . The first time I was ever aware of the requests of [Mother] for these alleged add-ons was when I received the moving papers for this [OSC] from my attorney on February 15, 1995."

Father then requested that if such expenses were ordered to be paid, he should be required to pay less than one-half, due to his former unemployment (and low income of $919/month) during the time the expenses were incurred (April 1993 through July 1994).

At the April 5, 1995 hearing on the OSC, the same commissioner who had heard the trial found that he "clearly" had jurisdiction over the issue of the add-ons, and the appropriate contribution should be on a pro rata basis, 27 percent. The court further found the add-on costs were reasonable. Father's share was calculated at $2,828.78, based on his former unemployment income, even though he currently made more money. The findings and order after hearing reflecting these rulings were filed May 3, 1995. The court denied Father's request for a statement of decision on that issue.

Father appeals the May 3, 1995, findings and order after hearing. Mother timely cross-appeals the same order. (Cal. Rules of Court, rule 3(c).)

DISCUSSION

Both Father and Mother contend the trial court erred in setting the amount of add-on expenses payable by Father at 27 percent: Father, because he believes the trial court lacked jurisdiction to award such expenses at any level because the trial had concluded without any such express award, and Mother, because she believes the award should have been higher based on Father's raised income as of the time of the hearing (and moreover that the earlier award of retroactive support in the underlying judgment should be recalculated at such raised income level). To resolve these issues, we first outline the statutory scheme for payment of such add-on expenses and then the rules governing the exercise of jurisdiction over posttrial child support matters, as well as the customary discretion afforded to trial courts in the child support area. We then apply these rules to these facts.

I

*Statutory Scheme*

Division 9 of the Family Code governs support; part 2 thereof governs child support; chapter 2 of part 2 deals with court-ordered child support; and

article 2 then sets forth the statewide uniform guidelines (the guidelines). (§ 4050 et seq.) Section 4055, subdivision (a) establishes the statewide uniform guideline formula for determining child support orders. Section 4061 then provides for additional support for children in appropriate cases, beyond the guideline amount, in the following pertinent language: "The amounts in Section 4062, if ordered to be paid, shall be considered additional support for the children and shall be computed in accordance with the following: [¶] (a) If there needs to be an apportionment of expenses pursuant to Section 4062, the expenses shall be divided one-half to each parent, unless either parent requests a different apportionment pursuant to subdivision (b) and presents documentation which demonstrates that a different apportionment would be more appropriate. [¶] (b) If requested by either parent, and the court determines it is appropriate to apportion expenses under Section 4062 other than one-half to each parent, the apportionment shall be [according to a specified formula.]"[2] (§ 4061, subds. (a) & (b).)

Section 4062, defining allowable additional child support, then provides for either mandatory or discretionary awards as follows:

"(a) *The court shall order* the following as additional child support: [¶] (1) Child care costs related to employment or to reasonably necessary education or training for employment skills. [¶] (2) The reasonable uninsured health care costs for the children as provided in Section 4063.

"(b) *The court may order* the following as additional child support: [¶] (1) Costs related to the educational or other special needs of the children. [¶] (2) Travel expenses for visitation." (§ 4062, subds. (a) & (b), italics added.)

In section 4063, also referring to additional child support (§ 4062), payment procedures for uninsured health care costs are set forth, requiring the parent who accrues or pays costs *pursuant to an order under this section* to "provide the other parent with an itemized statement of the costs within a reasonable time, but not more than 30 days after accruing the costs." (§ 4063, subd. (b).) It appears from all of the above that the Legislature has created two main categories of support, the basic guideline amount and "additional" support. (See *In re Marriage of Gigliotti* (1995) 33 Cal.App.4th 518, 527-529 [39 Cal.Rptr.2d 367] [discussing basic versus add-on support amounts].)

---

[2]The apportionment of additional support expenses under section 4062 is established by section 4061, subdivision (b)(1), (2), by using the basic child support obligation as set by use of the formula found in section 4055, subdivision (a), and then adding any additional child support ordered under section 4062 "in proportion to [the parents'] net disposable incomes as adjusted pursuant to subdivisions (c) and (d) [of section 4061]." Sections 4059 and 4060 deal with the computation of net disposable income but are silent as to whether current or past income may be used under different circumstances.

■ With respect to applications for retroactive modification or termination of support orders, section 3653 provides time limits on the scope of such orders: "An order modifying or terminating a support order may be made retroactive to the date of the filing of the notice of motion or order to show cause to modify or terminate, or to any subsequent date, except as provided by federal law. [Citation]." Ordinarily, therefore, retroactive support orders are not for a remote time period. These facts do not present an ordinary case, however, and we are required to assess the scope of the commissioner's jurisdiction to make this order after hearing, after trial.

## II

### Jurisdiction Over Child Support; Discretion

### A

### Nature of the Ruling

■ The parties have different views on the nature of the commissioner's May 3, 1995, ruling allocating the April 1993-July 1994 add-on expenses. They have both appealed that order, and Mother's cross-appeal, as briefed, also purports to appeal the underlying judgment of January 25, 1995 (in particular, its $2,400 award of retroactive child support). According to Father, the commissioner lacked jurisdiction to proceed posttrial, since the judgment issued by the commissioner completely disposed of child support issues by making other awards of future child support and basic retroactive child support. According to Mother, the commissioner expressly reserved jurisdiction to proceed later on a request for add-on expenses under section 4061 et seq., thus effectively bifurcating the trial (although the record does not reflect such express action).

■ To assess the validity of the findings and order on appeal, we review the scope of jurisdiction afforded family courts in child support matters. As stated by Witkin, "It is sometimes said that a tribunal 'has jurisdiction to determine its own jurisdiction.' The meaning of this doctrine, like that of others in this field, varies in accordance with the different meanings of the term 'jurisdiction.' [Citation.] It may mean jurisdiction of the court to determine that it has jurisdiction of the subject matter or of the parties, or that it has jurisdiction to act in a particular manner. And it may mean jurisdiction to determine jurisdiction initially, subject to review by a higher court, or jurisdiction to determine jurisdiction finally, under the principle of res judicata." (2 Witkin, Cal. Procedure (4th ed. 1996) Jurisdiction, § 330, p. 913.)

A separate determination is then required by the initial tribunal as to whether it has jurisdiction to proceed in the case. (2 Witkin, *op. cit. supra*, § 331, pp. 915-916.) This determination is reviewable by a higher court to determine if the lower court had jurisdiction to act. (*Ibid.*)

■ In the child support field, continuing jurisdiction over child support is the rule: "Once acquired in a proceeding where child support is in issue, . . . superior court jurisdiction over child support ordinarily *continues*. For example, a family court with jurisdiction over a marriage dissolution action may *first* make a child support order after the dissolution judgment becomes final (Fam. [Code,] § 2010[, subd.] (c); *Krog* v. *Krog* (1948) 32 [Cal.]2d 812, 816-817, 198 P2d 510, 512); and . . . the family court may exercise its continuing jurisdiction to *modify* a child support order postjudgment upon a showing of 'changed circumstances.' [Citation.]" (Hogoboom & King, Cal. Practice Guide: Family Law 1 (The Rutter Group 1998) ¶ 6:123, p. 6-52, original italics.)

■ Parents do not have the power to agree between themselves to abridge their child's right to support. (Hogoboom & King, Cal. Practice Guide: Family Law 1, *supra*, ¶ 6:23, p. 6-11.) Nor can they restrict the court's power to act on behalf of the child in support, custody, or parentage proceedings. (*Ibid.*, citing §§ 3580, 3585; *Armstrong* v. *Armstrong* (1976) 15 Cal.3d 942, 947 [126 Cal.Rptr. 805, 544 P.2d 941]; *In re Marriage of Ayo* (1987) 190 Cal.App.3d 442, 445-449 [235 Cal.Rptr. 458].) "Agreements and stipulations compromising the parents' statutory child support obligation or purporting to divest the family court of jurisdiction over child support orders are *void* as against public policy. [Citations.]" (Hogoboom & King, Cal. Practice Guide: Family Law 1, *supra*, ¶ 6:23, pp. 6-11 to 6-12, original italics.)

■ In light of this authority, Father's reliance on section 2556 for the proposition that the family court lacked jurisdiction to proceed on Mother's request for add-on support because it did not concern division of community assets or liabilities, has no merit.[3] Rather, the question becomes whether Father has provided an adequate record for this court to evaluate the order

---

[3]Section 2556 provides: "In a proceeding for dissolution of marriage, for nullity of marriage, or for legal separation of the parties, the court has continuing jurisdiction to award community estate assets or community estate liabilities to the parties that have not been previously adjudicated by a judgment in the proceeding. A party may file a postjudgment motion or order to show cause in the proceeding in order to obtain adjudication of any community estate asset or liability omitted or not adjudicated by the judgment. In these cases, the court shall equally divide the omitted or unadjudicated community estate asset or liability, unless the court finds upon good cause shown that the interests of justice require an unequal division of the asset or liability."

with a view to determining if there were a lack or excess of jurisdiction to proceed. Neither the January 25, 1995, judgment nor the May 3, 1995, order contains an express recognition that jurisdiction was reserved over the add-on support matter. All we have are the parties' opposing declarations about whether this was done, and the trial court's statement in its oral and written rulings that it "clearly" had the jurisdiction to proceed. ■ . To this record we apply the basic rule that it is the burden of the party challenging the order or judgment on appeal to provide an adequate record to assess error. (*Maria P.* v. *Riles* (1987) 43 Cal.3d 1281, 1295 [240 Cal.Rptr. 872, 743 P.2d 932].) Where parties fail to do so, their claims must be resolved against them. (*Ibid.*) ■ The usual rule applies: "A judgment or order of a lower court is presumed to be correct on appeal, and all intendments and presumptions are indulged in favor of its correctness." (*In re Marriage of Arceneaux* (1990) 51 Cal.3d 1130, 1133 [275 Cal.Rptr. 797, 800 P.2d 1227].)

■ With regard to the lack of an express reservation of jurisdiction in this matter, where the record is not otherwise, we may imply findings to support the exercise of jurisdiction. (*In re Marriage of Arceneaux, supra*, 51 Cal.3d at pp. 1134-1138.) ■ "In general, the failure to make a material finding on an issue supported by the pleadings and substantial evidence is harmless when the missing finding may reasonably be found to be implicit in other findings. [Citation.] The court's failure to make findings is also harmless when, under the facts of the case, the finding would necessarily have been adverse to the appellant. [Citation.]" (*Rojas* v. *Mitchell* (1996) 50 Cal.App.4th 1445, 1450 [58 Cal.Rptr.2d 354].]

We shall apply these rules, and those next discussed regarding the discretionary aspects of the ruling, in part III, *post*.

B

*Discretionary Determinations and Standard of Review*

■ The standards for evaluating the scope of trial court discretion in this area have evolved with recent statutory law. Particularly since the guidelines were enacted in 1992 (§ 4050 et seq.), child support is a highly regulated area of the law; however, trial judges still retain discretionary power, within statutory parameters, to make appropriate orders: "The facts and circumstances of the parties in each family law case are different, which is why these cases are equitable proceedings in which the court must have the ability to exercise discretion to achieve fairness and equity. It is for this reason that the author of the child support statute, later in the same legislative session in which it was adopted, ushered in another bill making clear

'that it was not the intention of the Legislature to eliminate family law judges' traditional discretionary authority to adjust child support orders in individual cases where fairness requires it.' [Citation.]" (*In re Marriage of Fini* (1994) 26 Cal.App.4th 1033, 1043 [31 Cal.Rptr.2d 749].)

Thus, the court in *Fini* went on to state: "We join the courts in *County of Lake* [v. *Antoni* (1993) 18 Cal.App.4th 1102 [22 Cal.Rptr.2d 804]] and *Estevez* [v. *Superior Court* (1994) 22 Cal.App.4th 423 [27 Cal.Rptr.2d 470]] by holding in this case that the court in child support proceedings, to the extent permitted by the child support statutes, must be permitted to exercise the broadest possible discretion in order to achieve equity and fairness in these most sensitive and emotional cases. This can be done without sacrificing the goal of consistency so prized by the Legislature." (*In re Marriage of Fini, supra*, 26 Cal.App.4th at p. 1044.)

██ With respect to the particular statutes involved here, the order for add-on support was made under section 4062, subdivision (a). ██ " 'It is a well established rule of statutory construction that the word "shall" connotes mandatory action and "may" connotes discretionary action.' [Citation.] ██ Thus, section 4062[, subdivision (a)] mandates ('the court shall order') additional child support for employment-related child care costs and reasonable uninsured health care costs, while it makes discretionary [subdivision (b)] ('the court may order') additional child support for educational or special needs of a child or for travel expenses for visitation. Among the family law bench and bar, these are usually referred to as mandatory or discretionary add-ons." (*In re Marriage of Fini, supra*, 26 Cal.App.4th at p. 1039, fn. omitted.)

Even though section 4062, subdivision (a) deals with "mandatory" additional support items, such an award cannot be made unless the trial court decides to apply that section and section 4061 ("[t]he amounts in Section 4062, *if ordered to be paid*, shall be considered additional support for the children and shall be computed in accordance with the following . . ."). (§ 4061, italics added; *In re Marriage of Fini, supra*, 26 Cal.App.4th at pp. 1039-1040.) ██ Here, the commissioner's decision to award additional support was essentially based on certain statutory interpretations of sections 4061, 4062, and 4063 (the portions of article 2, the guidelines, that refer specifically to additional child support). That is, the commissioner concluded that (1) such an award could be separately made for an already elapsed time period, according to proof, and (2) the support obligation, when ordered, should be measured by the payer's and payee's past, not current, income levels, as that was when the obligations were incurred. Only then did discretionary considerations come into play in the court's ruling.

■ In *In re Marriage of Drake* (1997) 53 Cal.App.4th 1139, 1150-1151 [62 Cal.Rptr.2d 466], the Court of Appeal set forth this blended standard of review for a case involving both statutory interpretations and discretionary matters: " ' "[T]he trial court's determination to grant or deny a modification of a support order will ordinarily be upheld on appeal unless an abuse of discretion is demonstrated." [Citation.] Reversal will be ordered only if prejudicial error is found after examining the record of the proceedings below. [Citation.] *However, questions relating to the interpretation of statutes are matters of law for the reviewing court.* [Citation.]' [Citation.] [¶] To the extent [Husband] challenges the trial court's factual findings, our review follows established principles concerning the existence of substantial evidence in support of the findings. On review for substantial evidence, we examine the evidence in the light most favorable to the prevailing party and give that party the benefit of every reasonable inference. [Citation.] We accept all evidence favorable to the prevailing party as true and discard contrary evidence. [Citation.]" (Italics added.)

■ We apply the same standard here for determining the validity of the postjudgment ruling to award add-on support, both as a matter of statutory interpretation and as a discretionary matter.

## III

### *Application of Authority*

■ Before we address Father's contentions, it is first necessary to address Mother's contention in her cross-appeal that not only the May 3, 1995, order after hearing is on review, but also the underlying January 25, 1995, judgment. That judgment dealt with child support levels for the time forward from the trial (August 1994 onward), and also dealt with general arrearages from April 1993-July 1994 ($2,400) based on Father's and Mother's then incomes. It did not, however, specifically deal with add-on support, nor did it purport to be a final rejection of any such claim. Mother's notice of cross-appeal refers only to the May 3, 1995 order, but her briefs discuss the related January 25, 1995, judgment as well.

As reviewed above (pt. I, *ante*), the child support statutory scheme provides for at least two components of child support, basic and "additional." (§§ 4055, 4061-4063.) The parties' trial briefing generally presented child support as an issue for trial. Therefore, a reasonable reading of the January 1995 judgment, in light of the entire record, is that it resolved basic child support issues, but not the other type of support, add-on expenses. As to those issues clearly resolved by the judgment, this cross-appeal is untimely (concerning the retroactive basic support order, $2,400 for 15

months). Where an order after hearing is neither interlocutory nor intermediate but a final determination, an injured party must timely appeal or lose the opportunity to do so. (*In re Marriage of Padilla* (1995) 38 Cal.App.4th 1212, 1215-1216 [45 Cal.Rptr.2d 555], citing Cal. Rules of Court, rule 2(a)(3); Code Civ. Proc., §§ 904.1, 906; *Kinoshita* v. *Horio* (1986) 186 Cal.App.3d 959 [231 Cal.Rptr. 241]; also see § 3554, the general appeals authorization for family law judgments or orders.)[4] Mother may not now challenge the January 25, 1995 judgment (by contending a different percentage allocation of basic retroactive child support would have been proper). (Cal. Rules of Court, rules 2(a), 3(c).)

 As to the May 3, 1995, findings and order after hearing, both Father and Mother contend the 27 percent share of add-on expenses Father was ordered to pay is inappropriate; Father would prefer 0 percent while Mother would prefer 50 percent. Dealing with Father's jurisdictional argument first, we read both the judgment and sections 4061 through 4063 as supporting the trial court's conclusion that it retained jurisdiction after trial and judgment to litigate the add-on child support matter. The judgment impliedly left open the possibility of resolving child support matters not then directly presented to the trial court, in view of its continuing jurisdiction over such matters and the parties' stipulation in June 1993 that the issue of child support would be continued until the time of trial (anticipated to be September 1993), with the family court to reserve jurisdiction to make an order for support retroactive to April 1993. Father has not shown error by producing a record to controvert the commissioner's conclusion that he "clearly" had jurisdiction to award add-on expenses for that time period. (*Maria P.* v. *Riles, supra*, 43 Cal.3d at p. 1295.)

Moreover, section 3653, dealing with applications for retroactive modification or termination of support orders and providing time limits on the reach of such orders, is not to the contrary. This was not a modification of the earlier support orders but an amplification of them, in a different statutory category than was previously considered by the court. The trial court's ruling, essentially an interpretation of sections 4061-4063, was consistent with general rules of statutory construction, as restated in *In re Marriage of Drake, supra*, 53 Cal.App.4th at pages 1155 and 1162, as follows:

" 'Absent persuasive precedent on the issue, resolution of the question presented requires this court to determine the Legislature's intent in enacting

---

[4]In *In re Marriage of Padilla, supra*, 38 Cal.App.4th at page 1216, the court found unmeritorious an argument that an initial order was " 'incomplete and specifically required the production of evidence for the calendared review hearing,' " and was thus interlocutory. The order was a final disposition of the issue and had to be appealed accordingly.

[the guidelines]. Our analysis follows "accepted rules for statutory construction, including the overriding objective of adherence to the intention of the Legislature [citation] and recognition of the principle that legislative intent is best determined by the language of the statute. [Citation.]" (*County of Tulare* v. *Campbell* [(1996)] 50 Cal.App.4th [847,] 853 [57 Cal.Rptr.2d 902].)' "

" '[S]tatutes are to be interpreted to give significance to every word contained therein' [citing *County of Tulare* v. *Campbell, supra,* 50 Cal.App.4th at p. 853]." (*In re Marriage of Drake, supra,* 53 Cal.App.4th at pp. 1155, 1162.)

 Applying de novo review to the statutory issues (*In re Marriage of Drake, supra,* 53 Cal.App.4th at pp. 1151-1152), we agree with the trial court that its May 3, 1995, ruling on add-on expenses was within the power granted by sections 4061 and 4062, as providing additional support for the children, "ordered to be paid" at the postjudgment hearing. (§ 4061.) It was not necessary on this record that the order to pay such support be made at the trial, in view of the general presentation of child support issues for trial and in view of the lack of resolution of that specific issue in the judgment.

 It was also within the trial court's discretion to choose to allocate such expenses based on the parents' income *as of the time the expenses were incurred,* rather than as of the time of the postjudgment hearing. Section 4053, a statement of principles for implementing the guidelines, is silent in relevant part on the time period in which the parents' ability to support their minor children shall be measured, as follows: "In implementing the statewide uniform guideline, the courts shall adhere to the following principles: [¶] (a) *A parent's first and principal obligation is to support his or her minor children according to the parent's circumstances and station in life.* [¶] (b) Both parents are mutually responsible for the support of their children. [¶] (c) *The guideline takes into account each parent's actual income and level of responsibility for the children.* [¶] (d) *Each parent should pay for the support of the children according to his or her ability.* [¶] (e) The guideline seeks to place the interests of children as the state's top priority. [¶] (f) Children should share in the standard of living of both parents. . . ." (§ 4053, italics added.) (Also see fn. 2, *ante.*)

As a matter of statutory interpretation, the trial court was within its rights to assess the request for add-on expenses as of the time of Father's ability to pay at the time the expenses were incurred, since they were retroactively ordered payments for a time period in which Father had limited income. Nothing in the statutes compelled it to do otherwise. ▪▪ The

formula for allocation of expenses set forth in section 4061, subdivision (b)(2) was properly applied to that income level.[5]

Moreover, the order for add-on expenses was consistent with the commissioner's earlier determination at trial that the retroactive basic child support award should be calculated at that lower rate, and there was no abuse of discretion in this respect. The cross-appeal lacks merit on this point.

Similarly, there was no defect in notice given to Father of the add-on expenses under section 4063. Even though that section, setting forth payment procedures for uninsured health care costs, requires the parent who accrues the costs pursuant to an order under section 4062 to "provide the other parent with an itemized statement of the costs within a reasonable time, but not more than 30 days after accruing the costs," the duty to give such notice is not triggered until there is an order for payment. (§ 4063, subd. (b).) Here, the order was made after judgment and for a prior time period, so Mother was not required under section 4063 to itemize costs until the order for allocation of expenses went into effect. Also, the trial court found the costs items were reasonable, so Father has not been prejudiced.

Applying all the rules set forth above, it is clear that the commissioner had jurisdiction to resolve the issue of add-on support as a postjudgment matter and was not foreclosed from doing so by statute, by any earlier rulings, or by the earlier judgment. (§§ 4061-4063.)[6]

## DISPOSITION

The findings and order after hearing of May 3, 1995, are affirmed. Each party to bear his or her own costs on appeal.

McDonald, J., and O'Neill, J.,* concurred.

---

[5]Because the trial court's orders were essentially matters of statutory interpretation, presenting questions of law, not fact, the trial court was not required to grant Father's request for a statement of decision. (*Palm* v. *Schilling* (1988) 199 Cal.App.3d 63, 66-67 [244 Cal.Rptr. 600]; *In re Marriage of Drake, supra*, 53 Cal.App.4th at p. 1155; Code Civ. Proc., § 632; Fam. Code, § 3654.) The same is true of the jurisdictional determinations based on undisputed facts. (2 Witkin, Cal. Procedure, *supra*, Jurisdiction, § 330, pp. 913-915.)

[6]Any request by Mother for attorney fees, as sought in her cross-appeal briefs, must be addressed to the trial court in the first instance. (§ 2030.)

*Judge of the San Diego Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.