Filed 10/30/24

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION EIGHT

| | |
|---|---|
| In re Marriage of LOIS and DAVID SARAYE. _____ LOIS KEIKO SARAYE, Respondent, v. DAVID KAZUTOSHI SARAYE, Appellant. | B331257 (Los Angeles County Super. Ct. No. YD002089) |

APPEAL from a post-judgment order of the Superior Court of Los Angeles County, Reginald Neal, Judge.  Affirmed.

Merritt L. McKeon for Appellant.

John L. Dodd & Associates and John L. Dodd for Respondent.

————————

# INTRODUCTION

Lois and David divorced in 1992.[1]  As part of the divorce judgment, David was to pay Lois child support.  In 2001, the child support obligation legally terminated, but a wage and earnings assignment order remained in place and continued to garnish David's wages to pay the child support obligation to Lois until 2008.

Thirteen years later, in 2021, David filed a request for order to determine overpayment of child support and receive a refund thereof.  Lois opposed the request.  The trial court found David did not take timely action to seek reimbursement of the overpayment of child support and that the reasons given for the delay in seeking reimbursement were insufficient to overcome the prejudice to Lois.  The trial court denied David's request.

On appeal, David requests that we reverse the trial court's order.  He argues the trial court erred because reimbursement of overpayment of child support is mandatory pursuant to Family Code section 4007.  David also argues the defense of laches does not apply to a request for reimbursement of child support overpayment.

We find the defense of laches does not apply here because Lois has unclean hands.  We affirm on other grounds, disagreeing with David's interpretation of Family Code section 4007.

---

[1]    Because the parties share the same last name, we refer to them by their first names to avoid confusion.

## FACTUAL AND PROCEDURAL BACKGROUND

### I. Background Information

Lois and David married on September 3, 1982. They separated on April 3, 1990.

The couple has one adult child, Shari, born in 1983.

The parties' judgment of dissolution was entered on July 22, 1992. Per the judgment, David was ordered to pay $425 in monthly child support and $286 in monthly spousal support. As for child support, the judgment provides payment shall "continue until the child dies, marries, reaches the age of majority, becomes otherwise emancipated, or until further order of the [c]ourt. Child support shall continue for the child of the marriage until she reaches age nineteen and is a full-time high school student living in the home of one of the parties." Lois served a wage and earnings assignment order at David's place of employment, resulting in the garnishment of the child and spousal support amounts from his paycheck each week.

On June 14, 1995, David filed for modification of the wage and earnings assignment order as to his spousal support obligation, noting "spousal support is terminated effective April 1, 1995." Spousal support was terminated.

Shari turned 18 in January 2001 and graduated high school in June 2001, but the wage and earnings assignment order remained in place, garnishing child support from David's pay for years until 2008.

### II. David's Request for Order

On November 18, 2021, David filed a Request for Order (RFO) to "determine overpayment of child support." He asked the court to "determine the amount of overpayment of child

support in the amount of not less than $46,061.55, plus interest" up to the date of the last wage garnishment (December 2008) and order Lois to reimburse him.

David provided his declaration and exhibits in support of his RFO. In his declaration, David stated that he "overpaid [Lois] $46,061.55" and wants her to reimburse him. He provided as an exhibit a Microsoft Excel spreadsheet summary of the wages withheld from his paycheck for the years 1991 through 2008. David also asked the court to order Lois to pay his attorney fees and costs, as he was forced to file the RFO "based upon Lois's over-collecting on the child support."

## III.   Lois's Response

Lois filed her responsive declaration on October 27, 2022. She did "not consent to the order requested" and asked the court to deny David's RFO "in its entirety." She requested that David be ordered to pay $5,000 of her attorney fees as sanctions pursuant to Family Code section 271.

Lois provided a supporting declaration and exhibits. In her declaration, Lois stated that David "waited fourteen (14) years from the alleged last date of his wages being garnished to make it known that he was going to come after [her] for 'reimbursement.' This is an unreasonable amount of time [and] would create an unimaginable financial burden." She argued that she and David "were both represented by competent attorneys" and were "aware of the wage assignments and the support orders" in place. Lois argues that if David "had any issue with this, he should have contacted his attorney and/or returned to [c]ourt to . . . seek an appropriate remedy." She further argued that David "knew this was the proper procedure, as evidenced by the fact that he did take action to end the spousal support portion of the wage

4

assignment three (3) years after the Judgment was entered [when] his attorney filed a Wage and Earnings Assignment Order re Modification of Spousal Support."

Lois attached as exhibits copies of the wage and earnings assignment orders issued for the payment of spousal support and child support.

## IV. **Hearing on David's RFO**

The hearing on David's RFO took place on April 20, 2023. The parties argued their positions to the trial court, echoing the content of their pleadings. David reminded the court that he incurred a substantial amount in fees and costs in effectuating service of process on Lois, who he claims evaded service on multiple instances. David also reminded the court of the "series of health issues that he and his now current spouse had suffered through during that period of time before" filing the RFO.

The trial court noted it had reviewed Family Code[2] section 3651, subdivision (c)(1)[3] and section 3653, subdivision (d)[4]. The

---

[2]  Undesignated statutory references are to the Family Code.

[3]  Section 3651, subdivision (c)(1) provides: "[A] support order may not be modified or terminated as to an amount that accrued before the date of the filing of the notice of motion or order to show cause to modify or terminate." (§ 3651, subd. (c)(1).)

[4]  Section 3653, subdivision (d) provides, in relevant part: "In determining whether to order a repayment, and in establishing the terms of repayment, the court shall consider all of the following factors: [¶] (1) The amount to be repaid. [¶] (2) The duration of the support order prior to modification or termination. [¶] (3) The financial impact on the support obligee of any particular method of repayment such as an offset against future support payments or wage assignment. [¶] (4) Any other

---

5

court ruled: "What stands out to the court is that . . . with respect to the spousal support portion of the wage assignment, [David] actually filed a wage and earning assignment order regarding modification of spousal support. [¶] . . . [¶] So assuming that is true, the court wonders why didn't [David] file a modification for child support? [¶] And here is the issue for the court, is that [David] waited 14 years to finally come to court and say, I have been paying—I overpaid for child support. [¶] If [David] would have waited, I would say anything less than three to five years, I would grant [David's] request . . . but [he] waited 14 years. I just think that is too long to come back to court to then request repayment of overpayment. [¶] So the court is going to respectfully deny [David's] motion."

The court added: "I do believe [David's] counsel's argument that your client, [Lois], does have unclean hands. Because I do believe at some point she knew that she was receiving this extra payment. I just don't believe that she just was clueless about it, especially since she was aware of the request to modify the spousal support. [¶] But, again, you know, [David] did what he needed to do with respect to spousal support. For whatever reason he didn't do what he needed to do [with respect to child support]. I understand the health issues. Trust me, I read everything. I understand. I went through it. And I still felt that at some point, you know, if it was just hiring an attorney to do all the legwork for you, that could have been done."

---

facts or circumstances that the court deems relevant." (§ 3653, subd. (d).)

The trial court granted David's attorney fee request and ordered Lois to pay David $3,000 in attorney fees as sanctions "for failure to comply with the [c]ourt's order." The court stated: "I do believe that [Lois] has unclean hands on this and I don't believe it is fair that she receives a windfall; however, I do believe that [David] played a role, a major role, in this." The trial court denied Lois's request for attorney fees.

## V.  **Findings and Order After Hearing**

On May 15, 2023, the findings and order after hearing (FOAH) was issued.

The FOAH provides: David's "request for reimbursement of amounts withheld from his paycheck after his court-ordered child support terminated as a matter of law is denied." The trial court found that David "did not take timely action to seek reimbursement from [Lois] and therefore [his] request for reimbursement is time-barred. The reasons given for the delay in seeking reimbursement were insufficient to overcome the prejudice to [Lois]."

The FOAH further provides: "Pursuant to [the] oral motion made under *Family Code* sections 2030 and 2032, [David's] request for sanctions against [Lois] is granted." Lois was ordered to pay David "the sum of $3,000 payable within forty-five (45) days." (Some capitalization omitted.)

This appeal followed.

7

## DISCUSSION[5]

David contends "statutory and case law [are] clear that overpayment of child support 'shall' be repaid" but the trial court relied on the "inadequate defense" of laches. He contends repayment of the overpayment of child support is "required" pursuant to section 4007. He argues "[t]here is simply no mention in the Family Code of applying the defense of laches to the overpayment or reimbursement of overpayment, of child support."

Lois argues the trial court did not abuse its discretion in finding David's 14-year delay precluded relief, relying on laches. She contends David "sought the amount paid from 2004 until the garnishment stopped in 2008" but did not file his RFO requesting reimbursement until November 18, 2021. She contends she will be prejudiced because of David's delay because she relied on the funds and provided for Shari during college.

We find the defense of laches does not apply given the trial court's finding that Lois had unclean hands. We also find section 4007 does not apply in the way David argues because the parties' divorce judgment did not require Lois to provide David with notice of the happening of any contingency in connection with child support. We affirm.

---

[5] We deny appellant's request for judicial notice, filed April 2, 2024; we find it is not relevant to the issue on appeal. (*Mangini v. R.J. Reynolds Tobacco Co.* (1994) 7 Cal.4th 1057, 1063 [disapproved on other grounds by *In re Tobacco Cases II* (2007) 41 Cal.4th 1257, 1276]; see also *American Cemwood Corp. v. American Home Assurance Co.* (2001) 87 Cal.App.4th 431, 441, fn. 7.)

## I.    General Principles

Section 4007 provides: "If a court orders a person to make specified payments for support of a child during the child's minority, or until the child is married or otherwise emancipated, or until the death of, or the occurrence of a specified event as to, a child for whom support is authorized . . . , the obligation of the person ordered to pay support terminates on the happening of the contingency.  The court may, in the original order for support, order the custodial parent or other person to whom payments are to be made to notify the person ordered to make the payments, or the person's attorney of record, of the happening of the contingency." (§ 4007, subd. (a).)

Section 4007 further provides: "If the custodial parent or other person having physical custody of the child, to whom payments are to be made, fails to notify the person ordered to make the payments, or the attorney of record of the person ordered to make the payments, of the happening of the contingency and continues to accept support payments, the person shall refund all moneys received that accrued after the happening of the contingency, except that the overpayments shall first be applied to any support payments that are then in default." (§ 4007, subd. (b).)

## II.    Standard of Review

The parties disagree on the applicable standard of review on the issue of laches.  David argues "the appeal should be decided using [the] de novo standard, as all issues herein are questions of law."  Lois disagrees and argues the abuse of discretion standard applies; she contends the trial court "did not

9

abuse its discretion in ruling David's 14-year delay precluded relief."

We agree with Lois. A trial court's laches finding is reviewed for abuse of discretion, and that decision will not be disturbed on appeal absent a clear showing of abuse. (See, e.g., *Lohman v. Lohman* (1946) 29 Cal.2d 144, 148–149; *DiCorpo v. DiCorpo* (1948) 33 Cal.2d 195, 200; *Levene v. Levene* (1952) 109 Cal.App.2d 155, 157; *Rupp v. Rupp* (1954) 129 Cal.App.2d 23, 24–25.) Where, as here, the trial court is vested with discretionary powers, we review its ruling for an abuse of discretion. (*In re Marriage of Duncan* (2001) 90 Cal.App.4th 617, 625.) As long as the court exercised its discretion along legal lines, its decision will be affirmed on appeal if there is substantial evidence to support it. (*Duncan*, at p. 625; *In re Marriage of Smith* (1990) 225 Cal.App.3d 469, 480.)

III.  **The Defense of Laches Does Not Apply on These Facts**

We need not, and do not, decide whether the defense of laches is generally available as a defense to overpayment of child support, because based on the facts of the case before us, the defense of laches is not available to Lois.

Laches is an equitable defense to the enforcement of stale claims and an equitable time limitation on a party's right to bring suit, resting on the maxim that equity aids the vigilant, not those who sleep on their rights. (*Magic Kitchen LLC v. Good Things Internat., Ltd.* (2007) 153 Cal.App.4th 1144, 1156.) To successfully assert a laches defense, a party must demonstrate three elements: (1) delay in asserting a right or a claim; (2) a delay not reasonable or excusable; and (3) prejudice to the party against whom laches is asserted. (*Id.* at p. 1157.)

10

Laches is an equitable remedy, and, as a general rule, a party seeking equitable relief must come into court with clean hands. (*In re Marriage of Cutler* (2000) 79 Cal.App.4th 460, 478; *In re Marriage of Fogarty & Rasbeary* (2000) 78 Cal.App.4th 1353, 1366, superseded by statute on another point as stated in *In re Marriage of Fellows* (2006) 39 Cal.4th 179, 185.) In the case before us, however, Lois's hands are unclean as the trial court expressly found at the RFO hearing. The trial court stated, Lois "does have unclean hands. Because I do believe at some point she knew that she was receiving this extra payment. I just don't believe that she just was clueless about it, especially since she was aware of the request to modify the spousal support." The trial court repeated this finding later on in the hearing: Lois "has unclean hands on this and I don't believe it is fair that she receives a windfall." Lois received years of monthly child support payments garnished from David's wages even though their child Shari was no longer a minor and had graduated high school. As a result of Lois's unclean hands, she cannot avail herself of a laches defense.

IV.    **The Obligor Bears the Burden of Terminating the Wage and Earnings Assignment Order**

Next, David argues section 4007, subdivision (b), requires Lois to refund the overpayment of child support. He cites to this statutory language: "If the custodial parent . . . to whom [child support] payments are to be made, fails to notify the person ordered to make the payments . . . of the happening of the contingency and continues to accept support payments, the person *shall refund* all moneys received that accrued after the happening of the continency, except that the overpayments shall

11

first be applied to any support payments that are then in default." (§ 4007, subd. (b), italics added.)

We find David's reliance on section 4007 misplaced. The preceding subdivision of section 4007 disposes of his argument: the court "*may, in the original order for support, order* the . . . other person to whom payments are to be made to notify the person ordered to make the payments . . . of the happening of the contingency." (§ 4007, subd. (a), italics added.) Here, the parties' judgment did not include any term requiring Lois to notify David upon the happening of any contingency. The judgment merely provides that child support payments shall "continue until the child dies, marries, reaches the age of majority, becomes otherwise emancipated, or until further order of the court. Child support shall continue for the child of the marriage until she reaches age nineteen and is a full-time high school student living in the home of one of the parties." Section 4007, subdivision (a) makes clear the statute applies only where the original order/judgment required the child support recipient to notify the child support-paying parent. (See 10 Witkin, Summary of Cal. Law (11th ed. 2017) Parent & Child, § 486 ["In the original support order, the court may order the payee to notify the payor, or the payor's attorney of record, of the happening of the contingency. [Citation.] If the payee fails to comply, and continues to accept support payments, he or she must refund payments that accrued after the happening of the continency."].) Lois was not required to provide any such notice per the terms of the parties' judgment. The judgment placed no notice obligations on Lois. Section 4007, subdivision (b) does not apply to her.

Further, no evidence in the record suggests David did not know his daughter Shari was no longer a minor or that she had

12

graduated high school. Nor does the evidence suggest David needed notice from Lois of the happening of any contingency. David knew the payments were still being garnished from his wages for years after, and still did nothing about it.

We then turn to the wage and earnings assignment order. The assignment order did not specify that the child support garnishments were to end by a date certain or upon the happening of a contingency (i.e., when minor child reaches the age of majority, graduates high school, etc.). Put another way, without an end date or statement of an ending contingency, the order is not self-terminating. Under section 5233, unless the order states a later date, beginning as soon as possible after service of the order on the employer but not later than 10 days after withholding pursuant to the assignment order, the employer must commence withholding pursuant to the assignment order from all earnings payable to the employee. (§ 5233.) Among other duties imposed on the employer, the employer "shall continue to withhold and forward support as required by the assignment order *until served with notice terminating the assignment order*." (§ 5235, subd. (a), italics added.)

Without a stated end date or stated terminating contingency in the wage and earnings assignment order and without specification in the parties' dissolution judgment that Lois was to notify David of the happening of a contingency (which would have triggered applicability of section 4007), it was David's responsibility, as obligor, pursuant to section 5240, subdivision (a)(2), to file an RFO requesting that the court terminate the pending wage and earnings assignment order. Section 5240 provides that "the court shall terminate the service

13

of an assignment order if past due [child] support has been paid in full" upon the filing and service of "a motion and a notice of motion by the obligor." (§ 5240, subd. (a)(2).) Alternatively, in lieu of filing and serving a motion to terminate the service of an assignment order, an obligor may request ex parte relief (except in specified circumstances described in the statute not relevant here). (§ 5240, subd. (b).) The onus was on David as obligor to cause the termination of the wage and earnings assignment order and request reimbursement for overpaid child support. He failed to do as the statute required.

We acknowledge we have found no statute or case law that sets time limits by which an obligor must file an RFO for reimbursement of overpaid child support. We have also found no case law that specifies factors the court considers when determining the terms of repayment where, as here, the obligor requests reimbursement of overpayment of child support 13 years after his child support obligation legally terminated by the happening of a contingency specified in the judgment. David argues *In re Marriage of D.H. & B.G.* (2023) 87 Cal.App.5th 586 is on point, but we disagree. In that case, after his daughter turned 18 years old in March 2020, "Father filed RFOs in July and September 2021 seeking a determination that his child support obligations had terminated [and] a return of overpaid support." (*Id.* at p. 590.) He alleged his daughter was over the age of 18 and no longer enrolled as a full-time high school student after June 2020, so "child support had terminated as a matter of law at that time." (*Ibid.*) On appeal, the reviewing court considered the definition of "full-time" high school student. (*Id.* at pp. 595–600.) *Marriage of D.H. & B.G.* has nothing to do with extremely delayed claims for reimbursement of overpaid child

14

support.  In fact, the father in that case filed his motion the year after his support obligation ended in stark contrast to David, who filed his RFO for reimbursement 13 years after his child support garnishment ended and 17 years after his child support obligation ended.

During the hearing on David's RFO, the trial court referred to section 3653, subdivision (d) when making its ruling.  Section 3653, subdivision (d) set out a list of factors to consider in "determining whether to order a repayment [of overpaid child support], and in establishing the terms of repayment" in matters involving an RFO for *retroactive* decrease or termination of a support order.  These factors include 1) the amount to be repaid; 2) the duration of the support order prior to modification or termination; 3) the financial impact on the support obligee; and 4) a general "[a]ny other facts or circumstances that the court deems relevant."  (§ 3653, subd. (d).)  We conclude the trial court properly and soundly considered the factors set out in section 3653, subdivision (d) because the issues (reimbursement for overpaid child support because obligation legally ended as compared to retroactive decrease or termination of a support order) present similar factual scenarios.

In this regard, we note child support proceedings are equitable proceedings in which the trial court is permitted the broadest discretion in order to achieve fairness and equity.  (*In re Marriage of Lusby* (1998) 64 Cal.App.4th 459, 470–471; see also *In re Marriage of Fogarty & Rasbeary*, *supra*, 78 Cal.App.4th at p. 1360 ["family law courts have traditionally been regarded as courts of equity"].)  Without a time limit set by statute, we conclude that the issue of whether and how to weigh the timing of the reimbursement request easily constitutes "any other fact[] or

15

circumstance[] that the court deems relevant" when balancing the equities under section 3653, subd. (d).  Given the 13-year delay in moving for relief and the court's findings that Lois was prejudiced by the delay, we find the trial court did not abuse its discretion in denying David's RFO for reimbursement of overpaid child support.

We affirm the trial court's order denying David's RFO.  (See *Taylor v. Elliott Turbomachinery Co., Inc.* (2009) 171 Cal.App.4th 564, 573, fn. 5 ["We may affirm the trial court's ruling on any ground supported by the record."]; see also *Jimenez v. County of Los Angeles* (2005) 130 Cal.App.4th 133, 140.)

## DISPOSITION

We affirm.  Each party to bear their own costs.


**CERTIFIED FOR PUBLICATION**



                                        STRATTON, P. J.

We concur:



        WILEY, J.



        VIRAMONTES, J.


16