Filed 10/2/25  In re A.O. CA4/3

NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FOURTH APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| In re A.O., A Person Coming Under the Juvenile Court Law. | |
| ORANGE COUNTY SOCIAL SERVICES AGENCY, <br><br> Plaintiff and Respondent, <br><br> v. <br><br> R.O., <br><br> Defendant and Appellant. | G065413 <br><br> (Super. Ct. No. 24DP0744) <br><br> O P I N I O N |

Appeal from an order of the Superior Court of Orange County, Robert Goodkin, Judge. Affirmed.

William D. Caldwell, under appointment by the Court of Appeal, for Defendant and Appellant.

Leon J. Page, County Counsel, Debbie Torrez and Aurelio Torre, Deputy County Counsel, for Plaintiff and Respondent.

No appearance for Minor.

\*　　　　\*　　　　\*

R.O. (Father) appeals from the juvenile court's order terminating his parental rights and placing minor child A.O. for adoption following a Welfare and Institutions Code section 366.26 hearing (366.26 hearing).[1] Father contends the order should be reversed because he did not receive proper notice of the 366.26 hearing. As discussed below, we conclude substantial evidence supports the court's finding that respondent Orange County Social Services Agency (SSA) diligently attempted to locate and serve father with notice of the 366.26 hearing, and subsequently, father was properly notified via his counsel. Additionally, father contends the court erred in denying his motion for a continuance of the 366.26 hearing. As discussed below, there was no abuse of discretion because father did not show good cause for a continuance. Accordingly, we affirm.

STATEMENT OF THE CASE

On May 31, 2024, senior social worker (SSW) N.L. filed an application for a protective custody warrant pursuant to section 340 to temporarily remove A.O. from his parents. The application alleged that J.G. (mother) gave birth via cesarean section to A.O. in May 2024, and both mother and A.O. tested positive for amphetamine and cannabis. On May 30, mother disclosed she used methamphetamine and marijuana while pregnant. Father reported having knowledge of mother's substance abuse. He also

---

[1] All further statutory references are to the Welfare and Institutions Code, unless otherwise stated.

admitted being arrested for possession of methamphetamine on February 13, 2024, and for domestic violence against mother on April 4, 2024. The application further alleged the parents have had two children removed from their care due to substance abuse issues. The juvenile court granted the protective custody warrant.

On June 4, 2024, SSA filed a dependency petition pursuant to section 300, subdivision (b)(1), alleging there was a substantial risk A.O. would suffer serious physical harm or illness by the parents' inability to provide care due to mental illness or substance abuse.

At the June 5 detention hearing, the juvenile court found SSA made a prima facie showing under section 319 and the minor came within section 300. The same day, father filed a change of mailing address form indicating he lived at "RHONE LANE" in Huntington Beach, but did not provide the street number.

In its July 17, 2024 Jurisdiction/Disposition Report, SSA recommended that reunification services for the parents should be bypassed because the juvenile court previously ordered termination of parental rights over a sibling due to the parents' substance abuse and the parents have not subsequently made reasonable efforts to treat the problems that led to the removal of the sibling. SSA also reported mother would not present herself for an assessment in the current matter. Father would not provide dispositional information or participate in a pre-trial interview.

At the July 22, 2024 jurisdiction hearing, the juvenile court continued the matter to August 5. At the August 5 hearing, the matter was continued at father's request until October 3. At the October 3 hearing, the matter was continued until October 25 due to father's counsel being unable to contact him, possibly because father was hospitalized. Later, the matter was

continued over minor's counsel's objection until November 8 due to father's hospitalization. The court, however, informed counsel of its intent to proceed with the matter at the next hearing date.

On November 8, the juvenile court conducted a jurisdiction hearing. The parents were not present, but were represented by counsel. Counsel for both parents moved for a continuance, which the court denied on the grounds the matter had been continued several times due to father's nonappearance and further continuance would not be in the best interest of the child. The court declared the child a dependent of the court and found reunification services need not be provided. It set a 366.26 hearing for March 7, 2025, and ordered counsel to inform the parents and SSA to provide "notice to all parties as required by law."

On December 10, 2024, SSA filed a declaration of due diligence, detailing its unsuccessful attempts to serve notice on father via certified mail. SSA stated it had located four addresses from the files of the current case and of the prior case involving A.O.'s sibling, and from various governmental and law enforcement records. One of the addresses was a specific Rhone address. The declaration specifically detailed the service on all addresses, except the Rhone address. However, the summary stated that a certified letter also was sent to the Rhone address, but no reply was received.

Thereafter, SSA filed three separate reports in the juvenile court of its attempted personal service of father with notice of the March 7, 2025 366.26 hearing. No report was filed at this time concerning personal service at the Rhone address.

On December 30, the juvenile court held a hearing to review notice to the parents. It found SSA exercised due diligence in its efforts to

4

locate and notice father. It ordered notice through counsel to father. Thereafter, father was served via substitute notice.

On January 9, 2025, SSA filed a report detailing its attempt to personally serve father at the Rhone address. These attempts occurred on December 17, December 19, December 21 and December 26, 2024.

In its section 366.26 report, SSA set forth a summary of the facts in the case and concluded "it does not appear that the mother or the father of the child have changed their life or the circumstances that brought the child to the attention of the court. Although they each have some visitation with the child, their relationship with the child is more of a friendly visitor than that of a parent. It should be noted that the father has had some health issues; he has not had any further contact or physically visited with the child in many months when given the opportunity. Neither the mother [n]or father has shown proof of any drug testing, attendance to any substance abuse treatment programs or support group meetings. They are currently alleged to be homeless and the mother is alleged to be pregnant." SSA recommended the juvenile court find the child adoptable and terminate parental rights. After the 366.26 hearing was continued until March 28, 2025, SSA submitted a supplemental report. In the report, SSW C.D. stated she spoke with father over the telephone on January 30, 2025. Later that day, she texted him to remind him the 366.26 hearing was being held on March 28, 2025.

On March 28, 2025, the juvenile court granted father's request for a continuance of the 366.26 hearing until April 15, 2025. It noted father had provided verification of a medical appointment.

At the 366.26 hearing on April 15, 2025, counsel for the parents moved to continue the hearing, citing their inability to contact their clients since March 28, 2025. The juvenile court denied the motions to continue,

finding a continuance would not be in the minor's best interest, counsel have made every effort to contact their clients, the parents were previously ordered to return, and the case had already been continued multiple times. The court found the parents received proper notice. It terminated parental rights, and ordered the minor placed for adoption.

On April 15, 2025, father noticed an appeal from the order terminating his parental rights.

DISCUSSION

I.

NOTICE

Father argues the juvenile court erred in finding he was properly notified of the 366.26 hearing. He contends: (1) he was not adequately notified by certified mail or other statutorily authorized means of the originally scheduled 366.26 hearing or the continued hearing; and (2) the notice error was not cured by substitute service on his trial attorney.

Because the interest of parents in the companionship, care, custody, and management of their children is a compelling one, before depriving a parent of this interest, the state must afford them adequate notice and an opportunity to be heard. (*In re Emily R.* (2000) 80 Cal.App.4th 1344, 1351 (*Emily R.*).) Notice must be reasonably calculated, under all the circumstances, to apprise the parents of the pendency of the action and afford them an opportunity to present any objections. (*Ibid.*, citing *Mullane v. Central Hanover Tr. Co.* (1950) 339 U.S. 306, 314.) Section 294, subdivision (a) generally provides that SSA must give notice of the 366.26 hearing to the parents. Section 294, subdivision (j) provides: "Notwithstanding subdivision (a), if the attorney of record is present at the time the court schedules a hearing pursuant to Section 366.26, no further notice is required, except as

6

required by subparagraph (A) of paragraph (7) of subdivision (f)." Section 294, subdivision (f)(7)(A) provides in relevant part: "If the court determines that there has been due diligence in attempting to locate and serve the parent and the . . . social worker recommends adoption, service shall be to that parent's attorney of record, if any, by certified mail, return receipt requested." If supported by substantial evidence, a trial court's findings that notice by mail or by publication were proper will be upheld on appeal. (*Emily R.* at p. 1354.) Whether the notice actually given satisfied statutory and constitutional requirements is a question of law, which we review de novo. (See *In re Marriage of Lusby* (1998) 64 Cal.App.4th 459, 472.)

Here, on December 30, 2024, the juvenile court found SSA exercised due diligence in attempting to locate and serve father. The court's finding of due diligence is supported by substantial evidence in the record, especially in SSA's declaration of due diligence. SSA reported that it located four addresses for father and it served a certified letter at each of the addresses, but no response was received. In separate filings, SSA also submitted evidence it attempted to serve father at those four addresses with notice of the 366.26 hearing before December 30, 2024. This evidence supports the court's finding of due diligence, and the due diligence finding supported substitute service via father's counsel.

Father does not challenge the adequacy of substitute service in this case. However, he argues substitute service is authorized only if the father's whereabouts are unknown "'and [he] cannot, with reasonable diligence, be served in any manner specified' by the statute," citing section 294, subdivision (f)(7). Father argues SSA's declaration of due diligence did not establish he was properly notified because the mailing of a certified letter to the Rhone address was mentioned only in the summary at the end of the

7

declaration and not in the main body of the declaration. We disagree for two reasons.

First, nothing in the main body of the declaration contradicts the statement in the summary that a certified letter was sent to the Rhone address. (See *DeNike v. Mathew Enterprise, Inc.* (2022) 76 Cal.App.5th 371, 382 ["In exercising substantial evidence review, . . . the court does not reweigh the evidence, but will uphold a judgment that is supported by substantial evidence even if substantial evidence to the contrary also exists"].) Additionally, SSA also filed a document evidencing that personal service was attempted four times in December 2024, including at the Rhone address. Thus, substantial evidence shows father could not be served via certified mail or personal service despite reasonable diligence on the part of SSA.

Second, because father's counsel was present when the juvenile court set the original date for the 366.26 hearing, the operative statutory provision is section 294, subdivision (j), not section 294, subdivision (f)(7). As noted above, under section 294, subdivision (j), upon a finding of due diligence, service can be done via substitute service on counsel. As noted, father does not challenge the adequacy of substitute service.

Father argues, even if he was properly notified about the originally-scheduled 366.26 hearing date, he was not notified about the continued date as required by section 294, subdivision (d). That statutory section provides in relevant part that "once the court has made the initial finding that notice has properly been given to the parent, . . . subsequent notice for continuation of a . . . 366.26 hearing may be by first-class mail to any last known address, by an order made pursuant to Section 296, by electronic service pursuant to Section 212.5, or by any other means that the

8

court determines is reasonably calculated, under any circumstance, to provide notice of the continued hearing." (§ 294, subd. (d).) Here, as father acknowledges, the juvenile court made its "initial finding that notice has properly been given to the parent" at the April 15, 2025 hearing. There was no further 366.26 hearing date. Thus, section 294, subdivision (d) does not apply. Additionally, there is no dispute father's counsel was notified about the continuances and was in contact with father until March 28, 2025, which was when father requested a continuance and the April 15, 2015 date was set for the 366.26 hearing. Therefore, father has not shown he was not notified about the continued dates of the 366.26 hearing.

In sum, father was properly notified about the 366.26 hearing under section 294, subdivision (j) and section 294, subdivision (f)(7)(A). That notice via substitute service on his counsel afforded father an opportunity to challenge SSA's recommendation that his parental rights be terminated and the child placed for adoption. Thus, all statutory and constitutional due process requirements were satisfied.

## II.

### CONTINUANCE

Father also argues the juvenile court abused its discretion in denying his request for a continuance of the 366.26 hearing on April 15, 2025. We disagree.

Section 352, subdivision (a) provides that if it is not contrary to the interests of the minor child, the juvenile court may grant a continuance in a dependency case for good cause shown, for the period of time shown to be necessary. It further provides that when considering whether to grant a continuance the court "shall give substantial weight to a minor's need for prompt resolution of his or her custody status, the need to provide children

9

with stable environments, and the damage to a minor of prolonged temporary placements." Here, the 366.26 hearing had originally been scheduled for March 7, 2025, and had been continued twice already. The only good cause for further delay identified by father is his statutory and constitutional due process rights to be adequately notified so he can protect his parental rights. However, as discussed above, father's statutory and constitutional due process rights were not violated. Thus, there was no good cause for a continuance. The court did not abuse its discretion in denying the continuance.

DISPOSITION

The order terminating parental rights is affirmed.

DELANEY, J.

WE CONCUR:

MOTOIKE, ACTING P. J.

SCOTT, J.

10